## Patience Montgomery *vs.* John B. Dorion.

An alien cannot take lands by descent. But he may take by purchase, and hold until office found; and he may convey lands.

When an alien dies, his lands vest at once by escheat in the State.

When a citizen dies intestate, and without heirs, his real estate vests immediately and without office found, in the State.

A State may by law make aliens capable of taking lands by descent, within its own territory.

The subscribing witnesses to a deed, which was lost, resided out of the State. The supposed maker of the deed testified that a copy, which was produced, was a true copy of a deed made by the witness. It was *held*, that this evidence was competent to be submitted to a jury as proof of the execution of the deed.

Where the subscribing witnesses to a deed resided in another State, the depositions of witnesses residing in such other State, proving the signatures of the maker of the deed and of the subscribing witnesses, were *held* to be proof of the deed—the subscribing witnesses having been absent from the country when the depositions were taken.

Where a deed of land was made in the name of the principal, but executed by an attorney, as follows: " In testimony of the foregoing, I. W., being duly constituted attorney for the purpose, has hereunto set his hand and seal, I. W. and seal," it was *held*, that the instrument was sufficient to pass the estate of the principal.

A witness testified that the signatures to a certain deed, a true copy of which he annexed to his deposition, were those of the maker of the deed and the subscribing witnesses, of whom he saw one; and that he saw the deed executed. A deed, of which the copy annexed to the deposition was an exact copy, was produced. It was *held*, that the deposition was competent evidence to be submitted to a jury to prove the execution of the instrument produced.

This was a petition for partition of land in Haverhill, the petitioner alleging that she was seized of three undivided fourth parts. Issue was joined upon the seizin of the petitioner, and the cause tried at the September sittings in this county, 1834.

It appeared that John Montgomery, being seized of the premises, on the 29th June, 1811, conveyed the same to Nicholas Dorion, in fee and in mortgage; and afterwards,

on the 16th October, 1822, released to the said Nicholas all his right to redeem ; and the said Nicholas then took possession, which he retained until his death in 1826.

Nicholas Dorion had living at the time of his death the following relations, viz. : John B. Dorion and Joseph Dorion, his brothers ; Maria A. Gowvin, his sister ; and Peter Dorion, M. A. Cary, F. Dorion, Julia Dorion, Joseph Dorion, M. A. G. Ibertson, and M. A. Gilroy, children of his brother, Peter Dorion, deceased.

All these relations of the said Nicholas were aliens at the time of his decease.

The legislature of this State, by an act passed on the 22d June, 1827, authorized and empowered the abovenamed relations of the said Nicholas Dorion, deceased, to hold and to convey the premises mentioned in this petition, as fully and effectually, and in the same proportions, as if they were citizens of the United States ; and declared that the State did not and would not claim the premises.

The petitioner offered in evidence a copy of a power-of-attorney, purporting to be signed by M. A. G. Ibertson and her husband, and to authorize Isaac Winslow, Jr., to make sale and dispose of her interest in the said premises, and make deeds of the same. There were subscribing witnesses to the power, which was dated July 31, 1828, and the copy was attested by the register of deeds in this county. The subscribing witnesses did not reside in this State, and it was satisfactorily proved that the original power was lost. The said M. A. G. Ibertson testified that the said copy attested as aforesaid, was a true copy of a power executed by her and her husband on the 31st July, 1828.

The petitioner gave in evidence a power-of-attorney purporting to be executed by M. A. Gilroy, and dated November 3, 1827. The subscribing witnesses were W. Pickering and I. S. Winslow. Isaac Winslow, in his deposition taken March 28, 1831, testified that he knew the said subscribing witnesses ; that they were absent from the country, on foreign voy-

ages, and would not return to Boston, where they resided when at home, until the middle of the next summer; that he knew their hand writing, and that their names on the power were in their hand writing.

The petitioner offered in evidence a deed dated November 20, 1828, which purported to be a conveyance of the premises to the petitioner, by Joseph Dorion and others; but it was executed as follows:

" In testimony of the foregoing, I. Winslow, Jr., being ' duly constituted attorney for the purpose by all the fore- ' going grantors, has hereunto set his hand and seal.

"ISAAC WINSLOW, Jr." and seal.

The petitioner further offered in evidence a deed dated 16th April, 1829, which purported to be a conveyance of the premises by Joseph Dorion and others, to the petitioner, and to be executed by Isaac Winslow, Jr. as their attorney. Isaac Winslow in his deposition testified that the signatures to a certain deed, a true copy of which was annexed to the deposition, were those of Isaac Winslow, Jr. and the subscribing witnesses, of whom he was one, and that he saw the deed signed and delivered. An original deed was produced, of which the copy annexed to the deposition was a true copy.

The respondent, John B. Dorion, became a naturalized citizen of the United States in November, 1828.

Nicholas Dorion was at the time of his decease a naturalized citizen of the United States.

A verdict was taken for the petitioner, subject to the opinion of the court upon the foregoing case.

*Bell*, for the respondent. We say, that nothing descended to the brothers and sisters of Nicholas Dorion at his death. An alien cannot take property in real estate by an act in law. *Cruise on Real Estate, Title*, 5, *ch.* 1, *sec.* 27.

The right to inherit depends on the existing state of allegiance at the time of the descent cast. 2 *Kent's Com.* 50.

The State took nothing at the decease of Nicholas Dorion, and could not without office found.   A person duly naturalized becomes entitled to all the privileges and immunities of a natural born subject.   2 *Kent's Com.* 57.   Nicholas Dorion having after his naturalization inheritable blood, nothing could pass to the State till office found, as it would in case he had been an alien at his death.   The relations of Nicholas Dorion, then, took nothing of his real estate at his death.

The resolve of the legislature in June, 1827, authorizes the relations of Nicholas Dorion to take, hold and convey the real estate of which he died seized.   But whatever may be said of the power of the legislature on this subject to give the right to hold real estate at all—it is very clear that it cannot be given retrospectively.   The legislature cannot say in June, 1827, that the party applying shall have had the qualification in June, 1826.   If the qualification can be given at all, it can only be given for the future.

The legislature, then, gave no qualification to the parties to take, hold and convey in this case.

But the legislature is expressly deprived of the right to confer this power at all by the constitution of the United States, which declares that " the Congress shall have power to establish an uniform rule of naturalization."   Congress has established such a rule, and no State can change it in any respect.

But the resolve of the legislature goes farther, and declares that this State do not and will not claim said estate as escheat by reason of the alienage of the heirs of Nicholas Dorion.   This is all very well, and may perhaps bar the State from making claim ; but it transfers no right or title to the heirs of Nicholas Dorion, for the plain reason that the State at the time had no right, and if it had, none is attempted to be conveyed by these words.   The State had none.   For although Nicholas Dorion died intestate, he had inheritable blood, being naturalized.   The State could have

no title then until an inquest of office had established the fact that no one was capable of taking the estate. This has never been done, and the State consequently never had any title.

The petitioner then derives no title from the State.

But the respondent was duly naturalized according to the acts of Congress, in November, 1828.

This we say gives him the whole real estate of Nicholas Dorion, his brother. If a citizen die and his next of kin be an alien who cannot take, the inheritance descends to the next of kin, who is competent to take in like manner as if such alien had ever existed. 2 *Kent's Com.* 49; *Coke Litt.* 8, *a ;* 4 *Wheaton* 453; 7 *John.* 214.

A person duly naturalized becomes entitled to all the privileges and immunities of natural born subjects. 2 *Kent's Com.* 57.

Naturalization has a retroactive effect, so as to be deemed a waiver of all liability to forfeiture, and a confirmation of the former title. 1 *John. Cases* 401; 2 *Bl. Com.* 250.

If an alien be made a denizen by the king's letters patent, and then purchases lands, his son, born before denization, shall not inherit these lands; but a son born afterwards may, though his elder brother be living. Yet, if he had been naturalized by act of Parliament, such eldest son might then have inherited. For that cancels all defects, and is allowed to have a retrospective effect and energy, which simple denization has not. 2 *Bl. Com.* 249—250.

The property in question, there being no heir qualified to take by descent in June, 1826, was in abeyance until John B. Dorion was naturalized, in 1828. He then became qualified, and by the retrospective effect of naturalization took the whole estate, as the next of kin to Nicholas Dorion.

This is like the case of a posthumous child, in which case it is well settled, that if the estate hath descended by the death of the owner to a brother, or nephew, the estate shall be devested and taken away by the birth of the pos-

thumous child.   2 *Bl Com.* 208.   There are many other cases of a like character.

The respondent, then, by his naturalization in 1828 became seized as heir at law of the whole estate in fee.

On this state of his title he becomes entitled to require of the petitioner to show her title of record in due form.

The deed of November 20, 1828, which has been offered by the petitioner, is signed by the attorney only, is sealed with his own seal, and is clearly insufficient to pass a title.

The deed of April 16, 1829, was made long after the respondent's title had become perfect.

The power-of-attorney from M. A. Gilroy was not properly proved.

*Nelson,* for the petitioner.

RICHARDSON, C. J., delivered the opinion of the court.

It is contended in this case on behalf of the respondent that the heirs of Nicholas Dorion, being aliens, took nothing in the land at the time of his decease—that nothing vested in the State for want of office found, and so nothing could be granted by the State—that congress has the exclusive power to give to aliens the rights of citizens, and therefore the legislature of a State has no power to give to aliens the capacity to hold lands—and that when John B. Dorion was naturalized, the whole estate vested in him.

It is very certain that an alien cannot take real estate by descent.   6 *Johnson's C. R.* 360, *Mooers* vs. *White ;* 4 *D. & E.* 300, *Doe* vs. *Jones ;* 2 *B. & C.* 779, *Doe* vs. *Acklam ;* 7 *Wheaton* 535 ; 5 *B. & C.* 771, *Doe* vs. *Mulcaster ;* 1 *Cowen* 89, *Sutliff* vs. *Forgey ;* 4 *Cranch* 321, *Dawson's lessee* vs. *Godfrey.*

But an alien can take by purchase, and hold until office found.   He can also convey.   *Com. Digest,* '*Alien,*' *c.* 4 ; *Shep. Touch.* 232 ; 6 *John. C. R.* 366 ; 12 *Mass. R.* 143, *Fox* vs. *Southack ;* 7 *Cranch* 620 ; 1 *Mass. R.* 256, *Sheafe*

vs. *O'Neil ; 7 Cranch* 603, *Fairfax's devisee* vs. *Hunter's lessee.*

In England, when a subject seized of lands dies without heirs, the lands revert to the original grantor, or lord of the fee. But although all lands are there holden mediately or immediately of the crown, yet as the king is not in all cases the immediate lord of the fee to whom the land of one who dies without heirs reverts, it is not quite clear, that when a subject dies without heirs his lands vest immediately in the crown without office found. But when it appears of record that the person so dying is the king's tenant, the lands vest immediately in the crown without office. 12 *East* 96, *Doe* vs. *Redfern ;* 4 *Coke* 54, *The Warden and Company of Sadler's case ;* 2 *Bl. Com.* 244; *Plowden* 229 *and* 481; *Wright's Tenures* 58 ; *Co. Litt.* 1 ; *Comyn's Digest,* " *Escheat,*" *A* 1.

If an alien purchases lands and die, the lands instantly vest by escheat in the State without any inquest of office. *Co. Litt.* 2, *b ;* 6 *Johnson's C. R.* 366.

But while the alien lives, the lands cannot vest in the State without office found. 5 *Coke* 52, *Page's case ;* 1 *Johnson's Cases* 399, *Jackson* vs. *Beach.*

In this State, the lands of which a citizen dies seized without heirs revert in all cases to the State, provided he dies intestate.

Upon principle, it would seem that lands must in such a case vest immediately in the State, without any inquest of office—as they do in England in the crown, when the king's tenant dies without heirs. If no person appears to claim as heir, there is nobody to be made a party to the inquest ; and nobody who is not a party, is bound. 4 *Mason* 268, *Stokes* vs. *Dawes.*

There may be cases in which an inquest of office might be expedient,—as where some person is found in possession, claiming as heir or otherwise ; but we are of opinion that an inquest of office is in no such case essential to vest the title in the State.

It is very clear that congress has the right to establish an uniform mode of naturalization. And, congress having exercised the power, no alien can become a citizen in any other way than in the mode prescribed by congress. The reason why this power was given to congress is very obvious. The constitution provides that the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States. If, then, it had been left to the several States to naturalize aliens at their pleasure, any State in the Union might at its pleasure give to aliens all the privileges of citizens in all the other States.

But when a State makes aliens capable of taking lands by descent, within its own territory, this by no means makes them citizens; nor does it give them any capacity to take lands by descent, or any other capacity whatever in any other State. Each State has the undoubted right to regulate the law of descent within its own limits.

The legislature of New-York has made aliens capable of taking land by descent in that State. 1 *Cowen* 89, *Sutliff* vs. *Forgey.* And it has been held, both in New-York and in Massachusetts, that a grant of land by the legislature to an alien and his heirs, enables the heirs, although aliens, to inherit. 5 *Cowen* 314, *Jackson* vs. *Ets;* 3 *Pickering* 224, *Commonwealth* vs. *The Heirs of Andre & Billon.*

We are of opinion that the act of June 22, 1827, made the heirs of Nicholas Dorion capable of taking the land by descent, and that the land vested in those heirs immediately upon the passing of the act.

The question then is, whether the petitioner has shown, by competent evidence, the title of those heirs under whom she claims, vested in herself.

Had Isaac Winslow, junior, authority to convey the interest of Ibertson and wife?

The respondent in this case sets up no title under Ibertson and wife. The power-of-attorney was shown to have been lost, and the subscribing witnesses were not inhabitants of

this State. A paper purporting to be a power-of-attorney from Ibertson and wife to Isaac Winslow, Jr., was recorded in the registry of deeds in this county; but as it was never duly acknowledged, it has been decided in this case a copy from the registry cannot be used as evidence. 6 *N.H.R.* 250.

Under these circumstances, what proof of the execution and contents of the power-of-attorney ought this petitioner to be required to produce?

The subscribing witnesses, not living in the State, she ought not to be compelled to produce them. There is another good reason why she should not be compelled to produce them. They very probably put their names to the instrument as witnesses without knowing its contents; and if called, as the instrument is lost, are not very likely to be able to swear that a power-of-attorney was executed. And very probably at this distance of time they may have lost all recollection of the transaction.

When an instrument has been lost, the declarations of him who executed it have been admitted as evidence. 3 *Pick.* 284, *Davis* vs. *Spooner*; 5 *D. & E.* 366, *Bowles* vs. *Langworthy*; 2 *John.* 451; 3 *John.* 477; 1 *Green.* 62, *note*; 5 *Espin. N. P. C.* 16, *note*.

If so, the testimony of the person who executed the instrument, when a credible witness, must be still better evidence. And we are of opinion that the testimony of M. A. G. Ibertson was competent to prove the power-of-attorney duly executed.

Was the evidence introduced competent to prove the execution of the power, which purported to be signed by M. A. Gilroy?

The subscribing witnesses are proved to have been residents in Boston in 1831, and it does not appear that they have ever been in this State. Proof of their hand writing was then competent evidence in this case. 1 *Greenleaf* 62, *note*; 5 *Espin. N. P.* 16, *note*; 1 *Starkie* 337.

Is the deed of the 20th November, 1828, so executed as to pass the estate?

Montgomery
*vs.*
Dorion.

When an attorney or agent makes a deed of land, to make it pass the estate of the principal, it must be made in the name of the principal. 4 *N. H. R.* 102.

In this case, the deed is in the name of the principals, so that the only objection to it is, that it is not so executed as to make it the deed of the principals.

There is no particular form of words required to be used, provided the act be done in the name of the principal. 2 *Starkie's Ev.* 477.

Where a deed was executed thus, " For James Brown, M. Wilkes and seal," it was held to be well executed. 2 *East* 142, *Wilkes* vs. *Back.*

It is not material that there should be more than one seal. 4 *D. & E.* 313, *Ball* vs. *Dunsterville.*

It is immaterial whether the names of the grantors are put at the bottom or the top of the writing, if in the whole instrument the grant purports to be their grant. 3 *Merrivale* 52, *Ogilvie* vs. *Foljambe ;* 2 *Starkie's Ev.* 605.

In this case, in testimony that the grantors who are named as such in the deed make the conveyance, the agent puts his hand and seal to the instrument. This seems to be tantamount to putting his hand and seal to the deed for them, which is sufficient.

We are of opinion that the deed is sufficient to pass the estate.

Was the evidence sufficient to prove the deed of April 16, 1829 ?

The witness testifies that the signatures to a certain deed, a copy of which he annexes to his deposition, are those of the grantor and the subscribing witnesses, of whom he was one. An original deed, of which the copy annexed to the deposition is an exact copy, is produced. It is not disputed that the instrument produced is an original deed. And we are of opinion that the circumstance that the copy is an exact copy of the deed, renders it sufficiently certain that the deposition relates to the deed produced. We, therefore, think

that the deposition was competent testimony to be submitted to the jury to prove the execution of the instrument produced.

And we are, on the whole, of opinion that there must be judgment in favor of the petitioner.