HATTIE ANGUS, EXECUTRIX, *vs.* GEORGE NOBLE ET AL.

First Judicial District, Hartford, May Term, 1900.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

A testatrix, who drew her own will, gave her niece *A*, who was one of her seven heirs, "$100 every three months while she lives, and at her death to be divided among the other heirs." The next six clauses gave smaller life annuities, payable quarterly, to the other six heirs, by name, and provided that upon their respective deaths the sum given the decedent should go: in three instances (*B*, *C* and *D*) "to his children;" in one instance (*E*) "to his wife," and at her death "to the other heirs;" in another (*F*) to his daughter, "and at her death to go back to the Nobles if she has no children;" and in another (*G*) "to go back to the heirs." The will provided that the estate was "to be kept in good repair" and the graves "kept clean," and "flowers once in a while to show that you have not

forgotten us." The 9th clause expressed a wish that her estate might be kept in *T* where she had lived so long. The 10th clause gave a pecuniary legacy of $500 to a church society, stating that it could be taken from a certain mortgage and that the other $600 due thereon should go to certain legatees, or if all parties wished they might take the interest and keep the mortgage. *A* was named as executrix and enjoined " to collect all rents and pay all debts, divide balance if any, and if you go short take out of each one share."

When the will was drawn the estate was yielding an income nearly or quite sufficient to pay the annuities, but owing to gifts made by the testatrix, was not sufficient at the date of her death. Upon a suit to determine the validity and construction of the will it was *held:* —

1. That the life annuities payable quarterly to the seven heirs were valid, and were treated by the testatrix as debts in the 8th clause, which provided for paying " all debts " before any annual division of the " balance " of the rents "among the heirs " could take place.

2. That the phrase "each one share " near the close of the will, meant " each one's share," and required a proportionate reduction of each annuity in case the income proved inadequate to pay in full.

3. That the executrix, being charged with the functions of a trustee, was entitled to qualify as such, after completing the settlement of the estate, although not termed a trustee in the will.

4. That during the trust period, which would continue until the decease of the last life annuitant, the testatrix's heirs took, under clause 8, as purchasers, the surplus annual income, if any, in proportion to the amount of their respective annuities.

5. That the ultimate bequests over vested in the remainder-men at the death of the testatrix, and inasmuch as they comprised the entire income or produce of the estate and were without limit as to time, must be regarded—as the testatrix evidently intended they should be—as a disposition of the corpus or principal; but that the heirs who shared in these remainders took *per stirpes* and not in the same proportions in which the surplus income was to be divided during the existence of the life estates.

6. That " the other heirs," meant the heirs of the testatrix other than those named in that clause; and the phrase " back to the heirs ," referred only to the heirs of the testatrix, and excluded any descent to the heirs of the annuitant mentioned in such clause.

7. That upon the death of the testatrix the children of *B*, of *C*, and of *D*, each took an absolute, equitable, vested interest in remainder, as a class, which would open to let in after-born children; but that *G* and the children of *D*, if, as would appear, aliens, could take no remainder in fee in Connecticut real estate, although they might share in the rents which accrued therefrom and formed part of the trust fund, during its existence.

8. That *E*'s widow would not take the annuity given " to his wife,"

Angus v. Noble.

upon his death, unless she were his wife at the decease of the testatrix.

9.  That if *F's* daughter should marry and have a child or children, they would take by way of executory devise; but if not, then upon her death that part of the entire trust fund would "go back" in the line through which it had descended, viz, to *F's* brother and sister or their descendants.

10. That during the continuance of the trust the remainder-men were entitled to receive the income accruing upon their respective undivided shares, after the expiration of the particular life estate therein, although their actual possession of the property might be deferred for the benefit of the surviving annuitants.

11. That the provisions for repairs and for keeping the graves clean were valid and obligatory upon the trustee during the continuance of the trust, but thereafter ceased to be of any effect; while that for placing flowers upon the graves was so uncertain as not even to amount to a precatory trust, and imposed no obligation whatever.

12. That clause 9 imposed no duty.

13. That clause 10 created a demonstrative legacy to the church society, which was payable in full if the mortgage therein referred to was sufficient for that purpose; and that no deficiency of income from the trust fund could be charged to or apportioned among the legatees taking under this clause.

A bequest of the income of an estate or of the produce of a fund, without limit as to time, is in law a gift of the property itself.

It is within the power of a Court of Probate to order a partial distribution of an estate to the remainder-men, where such course is deemed expedient and can be done without prejudice to the interests of the life tenants.

In the division of testamentary gifts among heirs at law, the rule of the statute of distributions is to be followed unless a contrary intent is apparent.

Argued May 1st—decided May 22d, 1900.

SUIT to determine the validity and construction of the will of Susan Mansley of Enfield, deceased, brought to the Superior Court in Hartford County and reserved by that court, *Robinson, J.,* upon an agreed finding of facts, for the consideration and advice of this court.

The will was drawn by the testatrix herself in 1897, and was as follows:—

"I, Susan Mansley of Enfield, Hartford County, State of Connecticut, of sound mind and memory, do make my last will and testament, revoking all wills heretofore made by me void.

Angus *v.* Noble.

" After the payment of my just debts, obligations, expenses of last sickness, funeral, and expenses of settling my estate, I do give, bequeath, and devise my estate as follows :

" 1. I give to my niece, Hattie Angus, one hundred dollars every three months while she lives, and at her death to be divided among the other heirs.

" 2. I leave to my brother, George Noble, forty dollars every three months, and at his death to go to his children.

" 3. I leave to my brother, William Noble, forty dollars every three months, and at his death to go to his wife, and at her death to go to the other heirs, they have no children.

" 4. I leave to my nephew, John Noble, twenty-five dollars every three months, and at his death to go to his children.

" 5. I leave to my nephew, William Noble, twenty-five dollars every three months, and at his death to go to Annie Noble, his daughter, and at her death to go back to the Nobles, if she has no children.

" 6. I leave to my nephew, Walter Maude, England, fifteen dollars every three months, and at his death to go to his children.

" 7. I leave to John W. Maude, fifteen dollars every three months, and at his death to go back to the heirs.

" 8. The rents to be paid every month and kept for three months, and all debts to be paid out of them, the balance to be kept until the end of the year and then to be divided among the heirs. The estate to be kept up in good repair, and our graves to be kept clean, and flowers once in a while, to show that you have not forgotten us.

" 9. I would like my estate to be in Thompsonville, for I have lived here so long, and I would like the estate kept as it is.

" 10. To the First Presbyterian Society on Church Street in Thompsonville, Conn., I give the sum of five hundred dollars to be kept as a separate fund, and the income thereof to be paid over to the home missions with which the said church is connected. This can be taken from the mortgage of Frederick and Emma Gliesman of North Main Street, Thompsonville, and the other six hundred that is due on the mortgage to go to

the children of Mr. and W. H. Whitney, one for each, and one for Clark Hamilton, that will take up the mortgage, or if all parties wish they can take the interest thereof and keep the mortgage.

" I appoint my niece, Hattie Angus, executrix of this will, no bonds being required of her, and if she shall be unable or unwilling to act as executor of this will, then I appoint Lilla Noble. They will have to collect all rents and pay all debts, divide balance if any, and if you go short take out of each one share."

She died in 1899, leaving real and personal property. When she made her will her estate was yielding an income nearly or quite sufficient to pay the annuities therein given, but before she died she gave away part of it and the income of what she left was not sufficient for that purpose. The gross rental of her real estate is $95 a month. Walter Maude is dead.

The other facts found are sufficiently stated in the opinion.

*Charles H. Briscoe*, for Hattie Angus.

*Charles E. Perkins*, for William Noble *et ux.*

*William H. Leete*, for the children of George and John Noble and the children of Walter Maude.

BALDWIN, J. The heirs of the testatrix were two brothers, Hattie Angus, John Noble and William V. Noble, the children of a deceased brother, and John W. Maude and Walter Maude, the children of a deceased sister. In her will she makes provision for each of them by name, and in a way which shows that she did not intend to be governed by the principles of the statute of distributions.

The bequests of specified sums to be paid every three months to Hattie Angus, George Noble, William Noble, her brother, John Noble, William Noble, her nephew, Walter Maude and John W. Maude, are each valid. It is argued in

behalf of the heirs at law that these provisions are inconsistent with that in the eighth clause of the will, which is that the rents are to be paid (by which is obviously meant that they are to be collected) "every month and kept for three months, and all debts to be paid out of them, the balance to be kept until the end of the year and then to be divided among the heirs." It is apparent that the term "debts" was here used as including the quarterly payments to the legatees. The fund out of which they were to come was, by the opening words of her will, to come into existence only after the payment of all her debts and obligations, the expenses of her last sickness and funeral, and those of settling her estate. She evidently thought there might be a surplus of rents, after satisfying all payments which she had directed, but that as the collections might be better in one quarter than another, it would be wiser not to divide such surplus oftener than once a year. This construction is confirmed by the statement with which the will concludes, that the executrix would "have to collect all rents and pay all debts, divide balance if any, and if you go short take out of each one share." To "go short," in the mind of the testatrix, evidently meant to be unable from the net income available for the purpose to pay the full amount of the quarterly legacies every three months, since the remedy she provides in that case is a corresponding deduction from the share of each. If these legacies were not considered as coming under the term "debts," that word must have been used to signify either debts due at her decease from her estate, or those subsequently contracted by the executrix. That it did not mean those due at her decease is proved by the express provision for their payment before any legacies. That it did not mean only those subsequently contracted by the executrix is shown by the provision for deducting whatever is necessary to meet them from the shares of the annuitants. This presupposes that there will be something left to go to the legatees; whereas there could be nothing left if the entire income were wanted to meet the proper charges of administration.

The phrase "each one share" should be read "each one's share." This is justified by the rule of *idem sonans*. She intended that each legatee should receive his full annuity, if the income proved adequate; but, if not, that his appointed share should be proportionally reduced.

The executrix was given the functions of a trustee, and is entitled to qualify as such, after completing the settlement of the estate. It is unimportant that the name of trustee was not conferred upon her in terms. *Hayden* v. *Connecticut Hospital*, 64 Conn. 320, 323.

This trust will continue until the decease of Hattie Angus, George Noble, William Noble, Sarah J. Noble, the present wife of William Noble, John Noble, William V. Noble, Annie Noble and John W. Maude, subject to the power of the Court of Probate to direct a partial distribution of the estate from time to time, if it be deemed expedient and can be done without prejudice to the interests of the annuitants then surviving.

The ultimate remainders to take effect in enjoyment after the determination of these life estates became vested at the death of the testatrix.

The introductory part of the will concludes thus: "I do give, bequeath, and devise my estate as follows." These words import an intention to dispose of the whole of it. Only $1,100, however, is afterwards made the subject of an absolute gift in express terms. This is preceded by other bequests which will exhaust the income annually accruing from the residue of the estate during the lives of certain persons particularly described. The ultimate remainders over are also interests in the income, but these are not limited in terms to the lives of the remainder-men.

A devise of the rents of a parcel of real estate is in law a devise of the parcel itself. *Stewart* v. *Garnett*, 3 Sim. 398. It is such because the value of land lies in its rents and profits, and he who is given that value is in effect given the thing which produces it. The same rule applies to a gift of the income of an estate or of the produce of a fund, without limit as to time. *Mannox* v. *Greener*, L. R. 14 Eq. 456;

*Gulick's Exrs.* v. *Gulick*, 25 N. J. Eq. 324; *Bristol* v. *Bristol*, 53 Conn. 242, 259.

Under these principles of construction, effect may properly be given to the general intent of the testatrix in creating the various remainders over in favor of certain classes of her kindred.

She established a trust which was to endure, at least, during a number of lives. It was her wish that throughout this period her estate should be kept as it was. The reference to adorning the graves with "flowers once in a while, to show that you have not forgotten us," indicates something to be done by those who, like the executors she named, had been personally acquainted with her, and so that she did not look forward to a perpetual trust to be administered by and for those to whom she would be unknown except by name.

The total amount of the quarterly payments to be made to the various legatees is $260. After satisfying these and the charges of administration, and expenses for repairs and keeping the graves clean, if there should remain at the end of any year, during the continuance of the trust, a balance in the hands of the trustee, it is, by clause 8, "to be divided among the heirs." In the clauses immediately preceding, all of her heirs had been named, and a specified sum out of the income of the estate assigned to each. She had given her brothers much less than was to go to a niece, and to two of her nephews much more than to two others. In this way one of the four collateral stocks of descent, between which her estate, had she left no will, would have been equally divided, is annually to receive more than the other three put together. This general intention must control the effect of the provision in clause 8 for a division among the heirs. Taking not as heirs, but as purchasers, and having been treated as purchasers unequally in the previous clauses of the will by which the bulk of her property was distributed among them, it must have been her intention that the annual surplus, if any there was, should be divided in similar proportions; and we think, taking the whole will together, that this intention is sufficiently expressed.

Of the $260 a quarter, which is the subject of the various life estates, Hattie Angus is, by clause 1 of the will, to receive $100. If the income in any year be insufficient to satisfy all the bequests, she must suffer an abatement; if it be more than sufficient, she will share in the surplus; and in either event she will receive annually a $\frac{100}{260}$ part of whatever is to be distributed. This is "at her death to be divided among the other heirs," and they were thereby invested, upon the decease of the testatrix, with an absolute equitable interest in remainder in an undivided $\frac{100}{260}$ part of the entire trust fund, including both real and personal estate. The words "to be divided" import a gift; and the gift dates from the day when the will speaks, its enjoyment only being deferred for the benefit of Hattie Angus. *Johnson* v. *Webber*, 65 Conn. 501, 513.

The term "the other heirs" is used twice in describing those who are to take in remainder; once here, and once in clause 3. In the latter it is obvious that it refers to the other heirs of the testatrix, that is, those other than William Noble. He had no children, who could inherit his share, and she therefore wished that it should ultimately belong to the rest of her nearest kindred. A similar meaning *prima facie* attaches to those words as used in clause 1; and there is nothing to rebut the presumption that such was the intent of the testatrix. Upon her decease, therefore, it was her heirs at law, other than Hattie Angus, who became invested with this estate in remainder in an undivided $\frac{100}{260}$ part of the trust fund. It must remain in the hands of the trustee and undivided until the expiration of the last of the life estates specifically created in the quarterly income, unless a partial distribution should be previously ordered by the Court of Probate.

It follows from these principles of construction, that by clause 2 the children of George Noble, as a class, were invested at the decease of the testatrix with a like absolute equitable interest in remainder in an undivided $\frac{40}{260}$ part of the entire trust fund. This class would open to let in any child who might be thereafter born. *Johnson* v. *Webber*, 65 Conn. 501, 514.

Sarah J. Noble, who was at the decease of the testatrix the wife of William Noble, took, upon that event, a life estate in remainder, which will entitle her to receive after his death $40 every three months, or a $\frac{40}{260}$ part of the annual net income from the trust fund. The use of the term "wife," instead of widow, imports that this life estate will not inure to the benefit of his widow, unless she be the person who was his wife at the decease of the testatrix. 2 Redfield on Wills, *28. Subject to these life estates (and to the duty of the trustee, unless otherwise ordered by the Court of Probate, to retain the whole fund in his hands until the expiration of all the other life estates), those, other than William Noble, who were the heirs of the testatrix at the time of her decease, became thereupon invested with an absolute equitable estate in remainder in an undivided $\frac{25}{260}$ part of the entire trust fund.

Clause 4 is to be construed in the same manner, *mutatis mutandis*, as clause 2.

Should Annie Noble marry and have a child, an absolute equitable estate by way of executory devise in an undivided $\frac{25}{260}$ part of the entire trust fund would thereupon arise in favor of such child, subject to its opening to let in after-born children on an equal footing; and this estate would not be divested, should such child or children die before her. Meanwhile, upon the decease of the testatrix (subject to being hereafter divested by the birth of a child to Annie Noble), an absolute equitable estate in remainder in this same undivided $\frac{25}{260}$ part of the trust fund became invested in those whom the testatrix described in clause 5 as "the Nobles." It was "to go back" to them. This indicates that it was to go back in the line through which it came down, namely, the line of James Noble. His stock was that to which the testatrix had already showed especial favor, for, of the legacies left by way of life estates, his children had received considerably more than half. This remainder, therefore, upon the decease of the testatrix, became vested in the three children of James Noble.

The construction of clause 6 follows that of clause 2, *mutatis mutandis*.

The remainder which was created subject to the life estate

in favor of John W. Maude was, at his death, " to go back to
the heirs." This expression can only refer to the heirs of the
testatrix. It excludes any descent to his heirs, or to his
mother's heirs, because there had been no preceding estate in
their favor, John W. Maude having taken as an immediate
purchaser. At the decease of the testatrix, therefore, an
absolute equitable remainder in an undivided $\frac{15}{260}$ part of the
entire trust fund became vested in her heirs at law.

The heirs who take in remainder under clauses 1, 3 and
7, take *per stirpes*, and not in the proportions which regulate
the distribution of the income during the existence of the
life estates. The exclusion of Hattie Angus under clause 1,
and of William Noble under clause 3, show that the testatrix
did not contemplate an ultimate division for the benefit of
the same persons whom she sought to prefer during their
lives. In testamentary gifts to be divided among heirs at
law, the rule of the statute of distributions is pursued, unless
a contrary intention be apparent. *Lyon* v. *Acker*, 33 Conn.
222.

So long as the trust continues, the income accruing upon
each undivided share, after the expiration of any life estate
which may be charged upon it, should be paid quarterly to
those entitled in remainder. That their actual possession of
the property may be postponed for the security of the surviv-
ing annuitants should not operate to deprive them of the en-
joyment of its fruits.

Walter Maude is described in the will as of England, and
in the writ both he and his brother are named as belonging
to that country. If at the decease of the testatrix they were
aliens, they could not take any interest in remainder in fee
in real estate in this State. Nor if the children of Walter
Maude were aliens at the decease of the testatrix, could they
take any remainder in fee in real estate in this State, under
clause 6. The provisions in favor of the Maudes, so far as
they relate to remainder interests in personal estate, or to
the quarterly payments from the net income of the trust fund
during the continuance of the trust, are valid. *Crosgrove* v.
*Crosgrove*, 69 Conn. 416, 429. The rents lose their quality of

real estate when mingled with the general fund. The children of Walter Maude, so long as the *corpus* of the trust estate remains undivided, will therefore be entitled to the quarterly payments which would have been enjoyed by their father, were he living.

Whether any equity would arise in their favor, upon its final division, to have their share of the *corpus* set out in personal property, were that found to be practicable, is a question which requires no present answer, and the facts bearing upon it are not fully presented upon the record.

The provisions for repairs and for keeping the graves clean, in clause 8, are obligatory upon the trustee during the continuance of the trust, but upon its final termination cease to be of any further effect. That for placing flowers on the graves is so uncertain in its terms as not even to amount to a precatory trust, and imposes no obligation whatever.

Clause 9 expresses a desire, but not in such a way as to impose any duty to respect it.

Clause 10 creates a demonstrative legacy to the First Presbyterian Society, which, subject to the rights of all the legatees under this clause to demand a transfer to them of the Gliesman mortgage (as respects the principal sum due thereon), is to be paid in full if the mortgage suffices for that purpose. Any balance collectible on the principal of this mortgage is specifically bequeathed to the six persons described. No deficiency of assets to meet the charges upon the income of the trust fund will impair the rights of the legatees under clause 10. 2 Redfield on Wills, *137 to *143.

The Superior Court is advised that the first nine clauses or sections of the will are valid and fully operative, except so far as it is otherwise above stated with regard to clause 9; that no part of the estate of the testatrix is intestate (unless there be an incapacity from alienage to take in remainder, on the final division of the *corpus* of the trust estate, on the part of some of the devisees) ; that under clause 10 the First Presbyterian Society takes a demonstrative (which by agreement of the parties in interest may be made a specific) legacy, and the Whitney children and Clark Hamilton specific

legacies; and that a decree be passed conformably to the construction given to the will in the foregoing opinion.

Costs in this court will be taxed in favor of the plaintiff and of George Noble, and of the children of Walter Maude, against the estate of the testatrix.

In this opinion the other judges concurred.