## THE STATE OF CONNECTICUT *vs.* SENECA H. THRESHER ET AL.

Second Judicial District, Norwich, April Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

There is no distinction between real and personal estate so far as the bond of a testamentary trustee is concerned; and therefore the surety upon such a bond is liable for a misappropriation of the proceeds of real estate which had been sold by the trustee.

Orders of the Court of Probate approving and allowing the accounts of a testamentary trustee from time to time do not conclude the rights of beneficiaries or remaindermen, unless they were present at the hearings or were notified thereof as provided by General Statutes, §§ 383, 384.

In an action upon the bond of such a trustee, the defendants alleged that the trustee's accounts, involving the sums claimed to have been misappropriated, were allowed "upon due hearing," and that the trustee "acted under the orders and advice of the Probate Court." *Held* that this did not necessarily or naturally import that the adverse parties were present, nor that the statutory notice had been given to them. It is quite different where a judgment of a court of law or equity is alleged to have been "duly rendered" or a cause of action between parties to have been "duly adjudged."

General Statutes, § 804, permitting an appellee to file a bill of exceptions, is limited in its scope and application to decisions of the court "in the course of the trial, or in the charge to the jury," and does not include a ruling upon demurrer.

The defendants sought to justify the alleged misappropriation upon the ground that it consisted of payments made by the trustee to the testator's son, who, although named in the will as a beneficiary of income only, was the sole heir at law of the testator and as such entitled to succeed to his intestate estate; and that the principal so paid to the son was in reality intestate property, the devise in remainder being void owing to the incapacity of the devisee to take. *Held* that while these facts did not constitute a legal defense to the action, in whole or in part, they might nevertheless form the basis for an equitable counterclaim; since a court of chancery, to avoid circuity of action, would under the circumstances regard the trustee as the equitable owner of that portion of the principal of the trust fund which he had already, though prematurely, turned over to the heir, and to whose rights he would therefore be equitably subrogated.

State *v.* Thresher.

After giving all his property, real and personal, in trust, and provid-
ing for the distribution of the income during the lifetime of his
widow and son, the testator directed the trustee to " pay over "
two thirds of the remainder to his brother, a citizen of Ireland.
The will did not authorize the trustee to sell real estate, and con-
tained no residuary clause. *Held* that the will must be construed
as giving the brother two thirds of the *corpus* of the estate and not
two thirds of the proceeds of its sale.
In selling and conveying the realty the trustee acted without authority
from the will or the Probate Court. *Held* that the continued ex-
istence of a mere theoretical or possible title to the land in the
trustee was of no avail to him, provided neither the real estate it-
self nor the proceeds of its sale were forthcoming to answer the
purposes of the trust.
The trial court excluded evidence to show that the trustee acted in
good faith. *Held* that such evidence was irrelevant.
Neither the advice nor orders of a Court of Probate can protect a trus-
tee in disregarding the terms of his trust.
Orders of a Court of Probate cannot be proven by parol.

Argued April 26th—decided July 1st, 1904.

ACTION upon a probate bond, brought to the Superior
Court in New London County and tried to the jury before
*Roraback, J.,* after a demurrer to the second and third de-
fenses had been overruled and one to the fourth defense sus-
tained (*Roraback, J.*) ; verdict and judgment for the plaintiff
for $104 damages, and appeal by it for alleged errors in the
rulings and charge of the court. *Error and new trial granted.*

*Wallace S. Allis,* for the appellant (plaintiff).

*Seneca S. Thresher* and *Charles F. Thayer,* for the appellees
(defendants).

PRENTICE, J. The complaint alleges in substance that
the defendants, Thresher as principal and Potter as surety,
in December, 1892, gave a probate bond in the penal sum of
$1,200 for the faithful performance by Thresher of his duties
as trustee under the provisions of the will of John Butler,
deceased, to which position Thresher had been duly ap-
pointed. By the will, which is annexed to the complaint,
the testator gave all his estate in trust, the trustee to pay

over all the income thereof as it should accrue to the testa-
tor's widow, Mary Butler, and their son, John, Jr., during
their lives, and upon their death to transfer, convey and pay
over the principal of said trust estate to John, Jr.'s, children,
if any should be then living, the same to be theirs absolutely,
but if no children of John be then living then, after the
payment of $50 for masses and $20 to a friend, two thirds
of the fund was given absolutely to the testator's brother Ed-
ward, of Ireland, and one third to the children of a deceased
sister, Mary Connor, late of Massachusetts.  The will did
not provide that its provisions in favor of the wife should not
be in lieu of her statutory right, contained no authority to
the trustee to sell real estate, and had no residuary clause.
The complaint further alleges that Thresher, as trustee, re-
ceived $2,257.74 in cash of the principal of said trust fund;
that after having been trustee from December 21st, 1892, to
July 2d, 1898, Thresher was succeeded by Edwin W. Hig-
gins, who has since been and now is the trustee; that
Thresher has paid over to Higgins $1,054.63 of the principal
of said fund and no more; that Mary Butler and John But-
ler, Jr., are both dead, the latter having died pending the
action and leaving no living issue; and that the suit was
brought for the special benefit of said trustee, Higgins, said
Edward Butler, and the children of said Mary Connor.

The answer contains three special defenses.  The second
and third are sufficiently noticed later.  The fourth alleges
that all of the testator's estate, save only such as was re-
quired to pay debts, funeral expenses and expenses of set-
tlement, and such as would be necessarily consumed in the
using, consisted of real estate; that Thresher had accounted
to the Court of Probate—and to its acceptance and approval
—for all of this estate; that the expenditures thereof made
by Thresher and so approved were chiefly for necessaries for
the support of the widow, Mary Butler, until her death in
June, 1894, and the support of the son, John, Jr., and his
wife and child, and all with the knowledge and consent of
said John, Jr.; that Edward Butler is a "foreigner" and
has never been in the United States; that the present trus-

tee, after the payment of all debts and charges, now has in his hands more than one third in value of the principal of said estate, the personalty which would be necessarily consumed in the using not being included. The four statements of account alleged to have been presented to and approved by the Court of Probate are made a part of the special defenses and annexed thereto, and all save the second purport to bear thereon the indorsement of approval by said John, Jr.

The plaintiff demurred to each of the special defenses. That to the fourth was sustained, the others overruled. The plaintiff thereupon filed replies to the second and third defenses, in which issues of fact were raised and the allegation made that the residuary legatees under the will were not present and had no notice to be present at any of the proceedings in the Court of Probate in relation to the allowance of the accounts of the trustee. To this allegation of new matter no rejoinder was made, and the case was heard to a jury upon the issues made.

Upon the trial the plaintiff claimed and offered evidence to prove, among other things, that the principal of said trust fund at the time of Thresher's appointment and qualification consisted of $1,136.03 in cash, and a farm appraised at $1,400, and that he received said principal in that form; that he afterwards sold the farm for $1,000.23 after deducting the expenses of sale; that Thresher, as trustee, charged himself with said two sums of $1,136.03 and $1,000.23, as appears by his accounts filed in the Court of Probate, making a total of $2,136.26; that Thresher had paid over to his successor, Higgins, only $1,054.63 of said principal; that he had refused to pay over the balance, to wit, $1,081.63, although demanded; and that Thresher had appropriated said balance as shown in said probate accounts. No evidence was offered to prove that any proceedings had been taken by the Court of Probate with respect to the sale by Thresher of said real estate.

That the farm in question formed a part of the estate which went into Thresher's hands was conceded by both parties.

In view of this fact the court instructed the jury as follows: That " the liability and undertaking of the surety, Mr. Potter in this case, upon the bond declared upon, is not broad enough to make Mr. Potter liable for money received by this trustee from the sale of real estate of the deceased. The money derived from the sale of real estate cannot, under those circumstances, be made a part of the principal fund of this trust estate so as to make the surety in this case liable therefor upon the bond now relied and counted upon."

These instructions furnish the ground for the plaintiff's principal assignment of error. The claim of error is well founded. The bond in suit was conditioned upon the faithful discharge by the trustee of the duties of his appointment according to law. One of these duties clearly was to so manage the trust estate in his hands that it should not be misapplied or misappropriated. The title to the property which comprised the estate was in him. This was as true of the realty as of the personalty. The proceeds of the sale of realty would be held by him in no other right, in no other manner, and for no other purpose, than would the other personal estate in his hands. There would be no occasion for their separation, nothing to prevent their commingling. The language of the condition of the bond, which the trustee as principal and the defendant Potter as surety gave, contains no limitation of the liability thereby imposed to the conduct of the trustee with respect to personalty or its proceeds. It contains nothing from which such limitation can be derived by construction. The argument attempted to be drawn from an assumed analogy between executors or administrators and trustees fails, because, if for no other reason, the analogy fails. The relation of an executor or administrator to the real estate of the deceased is quite different from that of a trustee to real estate in the trust fund. The former have no title to the property; it forms no part of the estate proper; they may have possession during the settlement of the estate; the property may upon their initiative be made subject by the court to demands arising out of the estate; but the legal title is elsewhere,

and, until the court intervenes for some of the few reasons permitted by statute, there can be nothing in the executor or administrator beyond the mere right of possession. If real estate is sold, its proceeds form a special fund which must not be mingled with the corpus of the estate, and must be accounted for separately. General Statutes, §§ 309, 353. The case is quite different with a trustee, and no reason can be suggested for the restriction of an obligation, unlimited in its terms, guaranteeing the faithful discharge according to law of his duties, to duties as respects some portion only of the estate which is in his hands to hold, manage and control for the purposes of the trust. The General Assembly doubtless had this distinction in mind when, in § 353 of the General Statutes, it provided for a bond when a sale of real estate by an executor or administrator was authorized, and provided for none upon a sale by a trustee. The omission from § 253 of a requirement for a bond was not, therefore, one of inadvertence ; it was one justified in reason, and serves to indicate the interpretation which the legislature placed upon the scope of the obligation of a trustee's bond. That interpretation was fully justified by the terms of the bond. It is doubtless true that the fact that a portion of the trust estate was in realty, which the trustee might not convey away without authority from the Court of Probate, influenced it in determining the amount of the bond to be required in this case, and that such considerations might fairly be taken into account in similar cases ; but that proves nothing as to the range of liability under the bond. It only demonstrates that when authority to sell trust real estate is given to a trustee the court ought to inquire whether, under the new conditions, the amount of his bond is sufficient or ought to be increased. General Statutes, § 211. There is no reason, legal or practical, why a trustee who sells real estate should give bonds of two kinds, both intended to protect the same estate from his acts. On the contrary, practical considerations dictate that the simpler method of a single, comprehensive obligation, or uniform co-extensive obligations, only should be used.

The second and only remaining error assigned by the appellant arises out of the overruling of the plaintiff's demurrer to the second and third defenses. The error here claimed to have been committed, in view of the instructions given to the jury, is more technical than substantial, in so far as the trial in question was concerned. The fundamental question involved was made the subject of correct instructions in such a way that the plaintiff could not have suffered harm by the court's failure to sustain his demurrer. The question, however, is presented, and as its consideration may serve to simplify the issues to be presented to the jury upon a second trial, we ought to pass upon it. The defendants in their second defense seek to protect themselves from what are claimed to be misapplications by the trustee of the funds which comprised the corpus of the trust estate, for the reason that the trustee from time to time, pursuant to statute, presented accounts of his stewardship to the Court of Probate in which the payments claimed to be misappropriations appeared and the same were by the court adjusted and allowed without appeal. In the third defense they plead that the payments now claimed to have been unauthorized were made in good faith under the orders, not appealed from, and advice of said court. The court correctly instructed the jury that no orders, adjudications or allowances of account by the Court of Probate could operate to conclude the rights of the claimants for whose benefit the suit is prosecuted, or to protect the defendants against their claims otherwise valid, unless notices of the hearings were given to the parties in interest as provided by statute. General Statues, §§ 383, 384; *Lawrence* v. *Security Co.*, 56 Conn. 423. Neither of the defenses makes any direct allegation of such notice, or that the parties in interest were in fact present in court. Beyond the allegation in the second defense, that the several accounts were allowed " upon due hearing," and the allegation in the third defense that the trustee acted " under the orders and advice of said court," there is absolutely nothing from which an allegation of due notice or presence could by any stretch of imagination be implied. It is quite clear that

a fact so essential to any conclusive effect in the allowances of account and orders relied upon was one which was required to be pleaded. The court in its memorandum seems to have regarded the allegations referred to as containing by implication a sufficient statement of presence or notice. We think that this conclusion was not justified. Notice to all parties in interest, or their presence in court, is not a condition precedent to a hearing upon and an adjustment and allowance of a trustee's account by a Court of Probate. Hearings thereon may be had and action taken without such notice or presence. The extent of their binding effect is another matter. They will not be binding upon those in interest not properly notified or present, but they are not nullities. An allegation of a hearing and allowance in due form does not, therefore, necessarily or naturally import that the proceedings were so had as to be binding upon everybody. The statute upon the subject is that the Court of Probate shall direct what notice, if any, shall be given to the parties in interest of these hearings. General Statutes, § 384. The situation is quite different from one where a judgment of a court of law or equity is alleged to have been duly rendered, or a cause of action between parties alleged to have been duly adjudged, as in *Fisher, Brown & Co.* v. *Fielding,* 67 Conn. 91. The demurrer to the two defenses which assigned the absence of any allegation that the parties interested were either notified of the hearing, or present thereat, as one of the grounds of demurrer, should therefore have been sustained.

The appellee has taken advantage of § 804 of the General Statutes and filed a bill of exceptions, wherein are presented four matters for our consideration in case a new trial is awarded. The court sustained the plaintiff's demurrer to the fourth defense. We are asked to pronounce that judgment erroneous. The question thus presented is not properly before us. Section 804 is expressly limited in its scope and application to " decisions of the court in the course of the trial, or in the charge to the jury." Its purpose is not to obtain a review of errors committed in the progress of the cause as upon appeal, but to provide by way of anticipation

for the conduct of a new trial which shall not fail by reason of doubtful questions upon which the presiding judge may be required to act.

Lest, however, the defendants may conceive that they have, by the action of the court in question, been deprived of a meritorious defense, we will add that we think that they have not, and for more than one reason. The argument before us in support of the sufficiency of this defense involves the assumption of an important fact which is nowhere alleged, although quite likely true, to wit, that John, Jr., was the only child of the testator. Waiving this omission, the defense is inadequate, since it fails to allege that the present trustee has sufficient estate in his hands to satisfy the claims of the children of Mary Connor after the expense of executing the trust has been taken therefrom. These children, of course, cannot be kept from their full share by reason of any equity arising from John, Jr.'s, conduct. Without these facts appearing the defense is entirely unavailable for the purpose apparently intended. If it has any virtue at all, it must be by reason of the single fact alleged, that Edward Butler, who is named as one of the persons for whose special benefit the suit is brought, is a non-resident " foreigner," and the persons entitled to take the intestate estate of the testator, whoever they may be, are not so named, although the successor in trust and present trustee is. The defendants have not ventured to make this claim, and even if we give to the allegation in the form it is made the full effect of one that Edward is and always has been a nonresident alien not a citizen of France, we should be unable to accept such a proposition. *Blakeman* v. *Sherwood*, 32 Conn. 324.

Again, the matters embodied in this defense, even if supported by those counsel have, without warrant, read into it, do not constitute matters of defense which can be pleaded as such. They might, as we shall have occasion to observe later, be made the basis of an equitable counterclaim, and thus serve to protect the defendants from the payment sought to be exacted upon the bond, but that would be only by reason of the equitable considerations involved in a payment

under the circumstances of what may be legally due. The theory upon which the defense is sought to be justified is, that the amount of recovery upon a penal bond is limited by statute to the amount equitably due. General Statutes, § 768. The argument misconstrues the purpose and scope of the statutory provision, which has for its object the declaration that obligees upon penal bonds shall not be held to pay the penal sum regardless of what may be justly due, but only the amount so due. Furthermore, the equity in favor of the defendants, which the situation is said to present, is not one which relates to the amount due upon the bond, but to the payment under the circumstances of what is rightfully due thereunder.

The defendants, having been deprived of their fourth defense, attempted upon the trial to obtain the benefit of substantially the same state of facts therein sought to be relied upon and assumed to be set up, and presented to the court a request to charge directed to that end. With this request the court correctly declined to comply. In the bill of exceptions it is stated that this claim was made in mitigation of damages. The request itself does not so indicate ; on the contrary, its phraseology clearly shows that the court was asked to tell the jury that the plaintiff, in order to recover, must negative the facts in question. With that aspect of the case nothing further need be said. If, however, it be conceded that the claim made was one in mitigation of damages, and that facts in mitigation of damages can be shown without having been pleaded, it still remains that facts such as the defendants sought to show could not be in mitigation of damage within the proper meaning of that phrase. They were not facts which tended to show that the plaintiff's conceded cause of action did not entitle it to so large an amount of damage as the showing on its side would otherwise justify being awarded. 1 Sutherland on Damages, 382. They were facts, as we have already said, which rather tended to show that it would be inequitable to require, under the peculiar circumstances of this case, the payment by these defendants of the whole or some part of the amount due under the bond.

Our observations concerning the defendants' attempts through the fourth defense and the request to charge referred to, to avail themselves of a state of facts claimed to exist, demand from us, perhaps, as the case must go back for a new trial, a fuller consideration of the defendants' rights in pleading, and, if the facts are established, to judicial relief. The claimed facts are such, if true, as appeal to the conscience of a court of equity, and call upon the court having jurisdiction over this action at law upon the bond, and exercising at the same time equity powers, to interpose in the exercise of its latter powers to say that in view of the circumstances disclosed, the relations of the parties in interest and their ultimate rights to the money demanded, the defendants ought not to be required to respond to the demand well founded in law, which is being made upon them, and pay over moneys which belong to them in ultimate right and which they could, if paid over, pursue in litigation and obtain.

The facts being as is assumed, that Edward Butler was a nonresident alien, a subject of Great Britain, and that John Butler's estate transmissible under the remainder clause in the will consisted wholly of real estate, any attempted gift to Edward of any portion of said estate, or share thereof, was void, and such portion or share became intestate estate and as such vested at once in the heirs at law of the testator, that is, either John, Jr., as the only child of the testator if such he were, or John, Jr., subject to the widow's dower which terminated in 1894. Any possible dower right may be disregarded. John, then, upon the death of his father, became vested with what might for any reason fall into the residue of the estate by reason of intestacy. Included therein, as events proved, was the approximate two thirds share of the trust fund which the will purported to give to Edward subject to a contingency which never happened. John's interest in said share having been a vested one, he had the power of disposition over it. Thresher's legal duty as trustee was to keep the trust fund intact in the interest of the *cestui que trusts* and all those who had any interest in the re-

State *v.* Thresher.

mainder. If, however, he failed in this duty and misapplied any portion, or the whole, of what proved to be John's share of the fund, neither John nor those claiming under him would be permitted to take advantage of this dereliction of duty and profit thereby. John, it is assumed, received the benefit of many of the payments of principal complained of, and authorized and approved of all of them. His death terminated the trust, and the only interests now to be safeguarded are those in the remainder, of which those claiming under him are entitled to substantially two thirds. While the present suit is brought for the benefit of the present trustee as well as the remaindermen, the ultimate rights involved are those of the latter persons. In so far as the obligation of the bond sued upon may by its terms require the obligees to account to Thresher's successor for that portion of the misused corpus of the trust estate which would enure to the benefit of him who profited by or authorized and approved the misuse, equity will discover that the equitable owner of such portion is not the legal owner, but Thresher, who has in effect paid to John his share in the remainder in advance of the rightful time of payment, and who therefore stands equitably subrogated to his rights. Recognizing this situation equity will protect the interests of the ultimate party in interest and excuse him and his surety from responding upon the bond in such a way that he might have to resort to legal proceedings to secure a return of what is equitably his. In this way, upon an equitable counterclaim, the court can by an application of the general principles of equity protect the ultimate rights of the defendants in so far as facts duly pleaded and proved may in equity justify.

The plaintiff seeks to avoid this conclusion by claiming that the gift to Edward in remainder was not void, since by the terms of the will he took by the act of the trustee and there was an implied direction that the trustee convert the realty into cash and distribute that. We think that the will does not bear such a construction. The share attempted to be given to Edward in remainder is a share of

the corpus of the estate and not a share of the proceeds of its sale.

The defendants also requested the court to instruct the jury, in substance, that assuming Edward Butler's competency to take what the will gave him, the surety could not be holden unless the plaintiff proved by a fair preponderance of evidence, that the title to the real estate, which the plaintiff claimed to show that Thresher had sold and conveyed, had been legally transferred, that is, transferred upon application to the Court of Probate for power to convey, notice of pendency and hearing, hearing and order. With this request the court also refused to comply, and correctly refused. The plaintiff assumed no such burden of proof. If, as the plaintiff claimed to have shown, Thresher had conveyed away the property and charged himself in his accounts with its proceeds and misapplied them so that they were not forthcoming, he did not have in his hands the estate which was entrusted to his keeping ready to be turned over to his successor as he was bound to do. A mere theoretical or possible title cannot be made by a trustee to act as a substitute for a full, legal title in possession, when he is called upon to produce an estate entrusted to his keeping. Thresher, if he had received no authority to convey the real estate which came into his hands, was bound to have that estate so that it should be forthcoming as unclouded in title, as unaffected by dispossession, and as beneficial in its status, as when he received it, in so far at least as his acts were responsible. Failing in this he committed a breach of his duty and his bond. *State* v. *Hunter*, 73 Conn. 435. The bill of exceptions seems to indicate that this request was also made in view of a mitigation of damages. Here again the request plainly shows otherwise. If it had been so made it would have had no more merit for obvious reasons.

Upon the trial the defendants sought to prove good faith on the part of Thresher in paying out the money of the fund as he did, and offered evidence to prove that he acted by the advice and upon the oral orders of the Court of Probate. This evidence the court rightfully excluded. The good faith

of Thresher was not in issue, and evidence to show it was irrelevant. Neither the advice nor orders of the Court of Probate could protect him as trustee in disregarding the terms of his trust. The orders of the court could not be proven by parol. *Atwood* v. *Lockwood*, 76 Conn. 555. Advice was without its province.

There is error and a new trial is granted.

In this opinion the other judges concurred.