THE MIDDLETOWN TRUST COMPANY, EXECUTOR, (ESTATE OF THOMAS GILBERT) *vs.* CLIFFORD C. GILBERT.

First Judicial District, Hartford, January Term, 1930.
WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

Argued January 7th—decided March 3d, 1930.

*George E. Beers,* with whom, on the brief, was *William L. Beers,* for the appellant (defendant).

*Ernest A. Inglis,* for the appellee (plaintiff).

HAINES, J. This appeal from the decree of the Superior Court is taken by Clifford C. Gilbert, who with his brother and sister, Norman Gilbert and Mabel G. Schutt, are the residuary legatees in equal shares under the will of their father, Thomas Gilbert late of Middletown, deceased, of which The Middletown Trust Company is the duly appointed and qualified executor. The present appellant brought his application to the Court of Probate for the district of Middletown wherein said estate is in process of settlement, for a partial distribution of the assets then in the hands of the executor and after a hearing but without any account being filed by the executor, the Court of Probate ordered the distribution of $7,000 to each of said legatees, a total of $21,000. The other two legatees did not join in the application, nor did they express any desire that a partial distribution be made at that time. The will was probated July 30th, 1926, and

August 26th, 1926, the present appellant appealed therefrom. On May 24th, 1927, the Superior Court sustained the decree. The following day this appellant began an action against the executor for services claimed to have been rendered to the testator, but withdrew the action November 29th, 1927. Thirteen days later, he applied to the Court of Probate for the removal of the executor, and this was refused one week later—December 19th, 1927. On June 19th following, he brought suit against the executor for an alleged violation of its agreement to sell him the homestead, claiming an injunction, a decree of conveyance and damages. The executor had sold the homestead to James and Margaret Ewald. Then, on July 7th, 1928, nineteen days afterward, he sued the Ewalds, setting up his claim to the property, asking equitable relief and damages, and thereafter the Ewalds served notice on the executor that they would claim damages from it for any loss they might sustain by such action against them. On March 22d, 1928, the appellant served written notice on the executor that in the event that the executor failed to do so, he would himself bring an action to recover title to certain lands in Madison, previously conveyed by the testator. It thus appears that there are two suits pending and at least two others threatened, and the extent to which the estate may be affected thereby obviously cannot now be determined. We are not impressed with the reasonableness of the demand of the author of this situation, that a part of the assets of the estate be distributed to him.

The finding of the Superior Court as to this litigation was, in part, objected to, but the objection was not pressed in argument. We think it should stand as made.

The executor's assistant treasurer testified at the

hearing in the Court of Probate, that there was then in the hands of the executor—after the payment of all claims presented to that time—$32,000, but that the probate fees, the executor's fees and other expenses of settlement of the estate had not been ascertained or paid. It does not appear that he testified as to any litigation in which the estate had been involved or with which it was threatened. This was an obviously important feature of the situation and an important consideration in the determination whether a partial distribution of the assets should be made at that time. The Court of Probate may or may not have known of these facts, but it does appear that it had received no account of the condition of the estate from the executor.

There are circumstances where a partial distribution pending the final settlement of the estate is permissible. *Webster* v. *Merriam,* 9 Conn. 225, 228 *et seq.; Clement* v. *Brainard,* 46 Conn. 174, 182; *Angus* v. *Noble,* 73 Conn. 56, 62, 46 Atl. 278; *Wordin's Appeal,* 64 Conn. 40, 54, 29 Atl. 238; *Belfield* v. *Booth,* 63 Conn. 299, 307, 27 Atl. 585. In many jurisdictions the distributee of any part of the estate before the final accounting is required to give bond to protect the executor against other claims which may be established against the estate, but this has not been our practice. *Davis* v. *Vansands,* 45 Conn. 600, 7 Fed. Cases, No. 3655.

Executors, however, are to be protected against the depletion of the assets of the estate in their hands below the amount necessary to pay all debts, expenses and other legitimate obligations, and to that end the Court of Probate has the authority upon due investigation to determine, if possible, the amount necessary for this purpose and may order distribution of that portion of the estate not so required; but where the

amount which may be necessary to meet further demands upon the estate cannot be determined with reasonable certainty, so as to fully protect the executor, a distribution should manifestly not be made.

In the present case, it would seem practically impossible to forecast the amount which may be needed to pay court and counsel fees and other costs of litigation affecting the real estate, to say nothing of possible judgments for damages. This, taken in conjunction with the general expenses of settling an estate subject to this litigation, creates a situation of uncertainty where a reservation of $11,000 might well be insufficient.

While the authority of the Court of Probate to order a distribution upon a proper showing of the condition of the estate is undoubted, it should only be done where the facts are clear, and then only upon a full accounting by the executor and adjudication by the Court of Probate. This account can be ordered by the court at any time. It is uniformly held in this State that a final distribution can only be decreed after the filing and acceptance of the executor's final account showing what is available for that purpose. The liability of the executor to the beneficiaries is thus definitely established and he is as a rule only discharged from that liability by payments thereafter ordered. Cleaveland, Hewitt & Clark, Probate Law & Practice of Connecticut, p. 353, § 274. The function of such an account is to show the condition of the estate and the manner of its management, and its purpose is to put this information in the possession of a public officer and as a part of the public files and open to the inspection of all concerned. *Parsons* v. *Lyman*, 32 Conn. 566, 576, Fed. Cases No. 10780, 5 Blatch. (U. S.) 170.

"The correct and speedy settlement of estates

requires that it should be done in a regular and orderly course; which can only be accomplished when a foundation is properly laid for each successive order of the Court of Probate, by the steps which should precede it; and the proceedings of that court cannot be regular, orderly or intelligible without full information from time to time of the situation of the estate. . . . The executors, by not presenting to the Court of Probate an account of these moneys in their hands, and having it adjusted, have prevented an order for distributing or paying over the same to the heirs from being made." *Davenport* v. *Richards*, 16 Conn. 309, 316.

"At the commencement of his official existence, the administrator stipulates with the court, in conformity with the express requisition of the law, that he will render a true and just account of his administration; and this he submits to the examination and adjudication of the judge. Such an administration account, sanctioned by the decision of the court, is necessarily precedent to the distribution of the deceased's estate. Every item in every administration account must be examined and adjudicated upon by the Court of Probate; nor is this matter of form, but of substance; otherwise the records of the court, which ought to be of incontrovertible verity, would afford no evidence of the just and legal settlement of an estate. . . . No distribution of an estate can be made until the administration account is allowed by the judge; for until this is done, the surplus to be distributed is unknown." *Edmond* v. *Canfield*, 8 Conn. 87, 90.

The reasons upon which the foregoing opinions are based are equally potent whether applied to a partial or a final distribution. An order of distribution based solely upon oral testimony of which no record is made by the court furnishes nothing to show a justification

for the court's order or the reason for its issuance. It affords no "evidence of the just and legal settlement" of the estate. Such a course is contrary to the long established policy of this State in requiring public records and an orderly and certain procedure in the administration of the estates of deceased persons. We know of no case in this State and none has been cited to us where an order of distribution has been made without an account previously adjudicated.

There is no error.

In this opinion the other judges concurred.