EDWARD A. PAVLICK *v.* THE MERIDEN TRUST AND SAFE DEPOSIT COMPANY, EXECUTOR (ESTATE OF WILLIAM V. PAVLICEK), ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

472

Argued June 4—decided July 13, 1954

*Leonard L. Levy,* with whom, on the brief, was *Herman M. Levy,* for the appellants (defendants Vincent Pavlicek et al.).

*Joseph F. Noonan,* with whom was *Francis J. O'Brien,* for the appellee (plaintiff).

*Paul W. McMahon* appeared for the named defendant.

INGLIS, C. J. The plaintiff appealed from a decree of the Probate Court for the district of Meriden determining the distributees under the will of William V. Pavlicek. The Superior Court rendered judgment sustaining the appeal, and from that judgment the distributees named in the probate decree have appealed. The principal question involved is whether nonresident aliens can take, by devise, title to real estate located in this state.

William V. Pavlicek died on June 4, 1949, leaving the plaintiff, his grandson, as his only heir at law. By his will, which was admitted to probate, he devised and bequeathed "[a]ll the rest, residue and remainder" of his estate in equal shares to Vincent Pavlicek, Maria Vitovec and Frantiska Roubec, his brother and sisters, who were citizens and residents of Czechoslovakia. The named defendant qualified as executor and during the course of probate obtained, pursuant to § 7022 of the General Statutes, an order of sale of the testator's real estate, consisting of property in Meriden and Westbrook in this state. The will did not direct the sale of the real estate, nor did it give a power of sale to the executor. After the acceptance of its final account, the executor had in its hands for distribution $6537.96, which represented the proceeds of the sale of the real estate commingled with the personal property left by the testator. The Probate Court found that the three persons named as residuary beneficiaries were the distributees to whom the

$6537.96 should be distributed. The state of Connecticut neither assented nor objected to the sale of the real estate or the order of distribution.

The trial court concluded that the devise to the nonresident aliens, hereinafter called the defendants, of so much of the estate as was real property was void, that the doctrine of equitable conversion did not apply, that the proceeds of the sale of the real property were intestate estate, and that, therefore, after they had been drawn upon to pay the probate expenses properly chargeable to them, they should be paid to the plaintiff as the heir at law of the testator.

Many authorities state that at common law, although an alien, whether resident or nonresident, was precluded from taking real property by operation of law, as by descent or inheritance, he was permitted to acquire and dispose of it by purchase or devise, at least unless and until the sovereign demanded an escheat. *Fairfax's Devisee* v. *Hunter's Lessee,* 7 Cranch (11 U.S.) 603, 619, 3 L. Ed. 453; *Ripley* v. *Sutherland,* 40 F.2d 785, 786; *Sheaffe* v. *O'Neil,* 1 Mass. 256, 257; *Montgomery* v. *Dorion,* 7 N.H. 475, 480; 5 Thompson, Real Property (Perm. Ed.) § 2438; 6 id. § 3129; 2 Reeves, Real Property, p. 1448; 2 Am. Jur. 491, § 51; 3 C.J.S. 553, § 15 (b). A comprehensive statement of this view of the common law appears in 6 Thompson, Real Property (Perm. Ed.) at page 275: "The common law made a distinction between the disability of an alien to take by purchase and his disability to take by inheritance; for, while an alien could acquire a defeasible title to land by devise or deed, he could take no title whatever by mere operation of law, as by descent, by right of curtesy, or by right of dower. The title which an alien acquired by purchase or

devise he could hold until office found [escheat], and he could, until such proceedings were taken, convey the land and confer title upon a purchaser. If the alien dies without having made a conveyance, the land vests immediately by escheat in the state without any inquest of office."

Whatever may have been the rule at common law generally, we are concerned only with the law of this jurisdiction. It is universally conceded that a state may by legislation prescribe any limitation it sees fit upon the right of an alien to acquire, hold or dispose of real estate located within its borders, subject only to the preservation of rights arising by treaties. *Apthorp* v. *Backus,* Kirby 407, 413. In the present case, the parties agree that there is no treaty between the United States and Czechoslovakia. Accordingly, we are free to center our attention on the common and statute law of Connecticut.

The history of our legislation on this subject commences in 1777. On October 11 of that year the General Assembly, after directing the seizure by the state of lands not belonging to any inhabitant or subject of this state or any other state of the United States, went on to enact "That no Inhabitant of this State, or of any other of the United States of *America,* who are inimical to the Freedom or Independence of said States, and refuse or neglect to take the Oath of Fidelity prescribed by the State to which he belongs, nor any Alien or Foreigner, shall be capable to purchase or transfer any real Estate within this Government, without special Licence from the General Assembly; and all Conveyances or Grants or Transfers whatever, made of any such real Estates by, or to any such Person or Persons without such Licence, shall be void and of no Effect." Acts & Laws, 1750-1783, p. 475.

476

In the Revision of 1784, the statute appeared in the following form (p. 83): *"Be it enacted* . . . That no Person who is not a Citizen or Inhabitant of this State, or one of the United States of *America,* shall be capable of purchasing or holding any Lands within this State, without special Licence from the General Assembly." There was attached a proviso which is of no importance in the present discussion. In subsequent revisions and compilations, to and including that of 1838, the statute appeared in substantially the same form. Statutes, 1808, p. 350; 1821, p. 301; 1824, p. 254; 1835, p. 349; 1838, p. 389. During the period, the General Assembly enacted a statute providing that the Superior Court might empower an alien who had resided in this state for at least six months "to receive, hold, convey, and transmit by grant, devise, descent, or otherwise, real estate in this state." Public Acts 1824, c. 26.

The statute declaring that no alien was capable of purchasing or holding any lands within the state does not appear in the Revision of 1849 or in any subsequent revision. It was not, however, repealed between 1838 and 1849. This anomaly is in part explained by the fact that between 1838 and 1849 the General Assembly had relaxed some of the restrictions against aliens who were residents of the state. In 1845 it was enacted that any alien who had declared his intention to become a citizen of the United States and had thereafter resided in this state for at least one year might "hold, convey and transmit by grant, devise, descent or otherwise, real estate in this state." Public Acts 1845, c. 3. In 1846 it was enacted that all conveyances made prior thereto by deed, devise or otherwise to any "foreigner" not authorized to hold real estate be validated. Public Acts 1846, c. 28. In 1848 it was provided that

any alien woman, the wife of a man capable of holding land, could take and hold land and was entitled to dower in the estate of her deceased husband, and that any child or lineal descendant of any person capable of holding land could take title as heir at law. Public Acts 1848, c. 56. Again in 1848 it was enacted "That no person shall be disqualified by reason of his being an alien from purchasing, holding, inheriting, or transmitting real estate in this state, in as full and ample a manner as native born citizens: *Provided,* such alien so purchasing, holding, inheriting or transmitting, be a resident of this state, or some one of the United States." Public Acts 1848, c. 15. It is of importance to note that all of this legislation, except that pertaining to widows and lineal descendants with reference to their dower and rights of inheritance, affected only aliens who were residents of either this or another state. It did not remove the disability of nonresident aliens. It is also worthy of note that in 1848 the General Assembly deemed it necessary, in removing the disqualification from resident aliens, expressly to include titles acquired by purchase as well as those acquired by inheritance, thus recognizing that no distinction was to be made between purchase and inheritance.

In the Revision of 1849, the legislation of 1848 just referred to was combined in a single section which read: "Any alien, who is a resident of this state, or of any of the United States, may purchase, hold, inherit, or transmit, real estate in this state, in as full and ample a manner as native born citizens; and the wife of any alien capable of holding land in this state, may take and hold land in this state by devise or inheritance, and shall be entitled to dower in the land of her deceased husband; and

the children and other lineal descendants of any person capable of holding lands in this state, may take and hold such land as heirs at law of such ancestor." Statutes, 1849, p. 455, § 6. Except for the inclusion in 1870 (Public Acts 1870, c. 139) of French subjects, whether residing in the United States or not, among those who may purchase, hold, or transmit real estate in this state, the statute has remained in substantially the same form since 1849 and is now § 7166 of the General Statutes.

One other piece of legislation is of significance as bearing on the status of our present law with reference to the ability of nonresident aliens to take title to real estate by purchase or devise. We have already pointed out that the legislation of 1845 to 1848 applied only to resident aliens. In 1857 the General Assembly adopted an act which related to nonresident aliens. Public Acts 1857, c. 50. This was the statute, now § 7167 of the General Statutes, which provided that any alien not a resident of the United States might "by deed or otherwise" acquire and hold real estate in this state for the purpose of mining or smelting ore, and for other purposes connected therewith, provided that if the land was not used for those purposes for a period of ten years the title reverted to the resident of the United States from whom it was acquired. The act also provided that title to lands so held by a nonresident alien might be transmitted by deed or otherwise, provided "that no alien, not a resident of the United States, shall acquire any greater title to said real estate by such transmission or inheritance, than he could acquire by virtue of the first" part of the statute. This legislation clearly indicates an intention on the part of the legislature over the years to permit nonresident aliens to acquire title to land by

purchase for only a very restricted purpose and not generally. With the exception of this statute, the General Assembly has never enacted any legislation removing the disqualification, imposed originally in 1777, of nonresident aliens to take title to land.

We have reviewed the history, since 1838, of the legislation on the subject of the right of aliens to take title to lands in order to account for the fact that, although the law adopted originally in 1777 prohibiting all aliens from purchasing or inheriting or holding lands has never been specifically repealed, it has not appeared in the various revisions of our statutes since that time. The explanation of that lies in the theory that the enactment of 1777 had been on the books for so long and was so firmly imbedded in the law of the state that it was commonly regarded as having established the policy of the state and as having become practically a part of the common law of this jurisdiction. For that reason the revisers in 1849 and the General Assembly, in approving their work, deemed it necessary to incorporate in the revision only such modifications of the general principle as had been specifically enacted. It must have been obvious to them that the specific enactments of 1845 to 1848 affected only resident aliens. The law as it affected nonresident aliens had not been changed. The legislature, in enacting the legislation of 1845 to 1848 and the Revision of 1849, must have recognized that, except as it had been modified, the law prohibiting all aliens from purchasing land was still the law of the state. Otherwise it would not have been deemed necessary to enact statutes removing resident aliens from the operation of the general law. It is also clear that the General Assembly in 1857 must have believed that it was then still the

law that a nonresident was incapable of taking title to land by deed or devise. Otherwise it would not have deemed it necessary to enact the law giving the power of taking and holding land to nonresident aliens for certain restricted purposes.

It is, of course, true that, in enacting the Revision of 1849, the General Assembly repealed all earlier public statutes which did not appear in the revision. Statutes, 1849, p. 627. That fact, however, does not contradict our theory that the General Assembly had come to regard the rule that nonresident aliens were incapable of taking title to real estate as a part of the common law of the state. If they did so regard it, they would understand that the catchall repeal of public statutes not appearing in the revision would not affect the common law.

That the law as expressed originally in the act of 1777 had come to be looked upon as the common law of the state is supported by the writings of Zephaniah Swift on the subject. In his System, published in 1795, he said (Vol. 1, p. 299): "Foreigners or aliens, are incapable to purchase or hold lands in this state, by force of statute, which declares, that no person who is not a citizen or inhabitant of this state, or one of the United States of America, shall be capable of purchasing or holding any lands within this state...." Thus in 1795 Swift recognized that the law on the subject was embodied in the statute. However, in his Digest, published in 1822, he wrote (Vol. 1, p. 120): "Foreigners cannot, by the common law, purchase and hold lands...." Apparently by the latter year he had come to recognize that the principle enunciated in 1777 by the General Assembly had become a part of the common law of the state.

Furthermore, in four cases, all decided subsequent to 1849, this court has recognized that it is the law of

the state that nonresident aliens are not capable of taking real property by purchase or devise. *Crosgrove* v. *Crosgrove,* 69 Conn. 416, 422, 38 A. 219; *Angus* v. *Noble,* 73 Conn. 56, 66, 46 A. 278; *State* v. *Thresher,* 77 Conn. 70, 80, 58 A. 460; *Emery* v. *Cooley,* 83 Conn. 235, 237, 76 A. 529. In the first two cases, the devises held void were of remainder interests to the heirs of the testator, who were nonresident aliens. It is argued by the present defendants that these cases are not in point because the holding of the court might be supported under the common-law rule that an alien cannot take by inheritance, rather than under any rule that he cannot take by devise. As to this contention, it is sufficient to point out that in this jurisdiction, at least since 1777, no distinction has been recognized between a taking by inheritance and a taking by devise. Moreover, in the *Angus* case, supra, we said without qualification: "If at the decease of the testatrix [the heirs] were [nonresident] aliens, they could not take any interest in remainder in fee in real estate in this State."

In *State* v. *Thresher,* supra, it was held that upon a retrial of the case the jury should be charged that a devise of a remainder interest in real estate to a nonresident alien was void. In *Emery* v. *Cooley,* supra, we said, by way of dictum, with reference to a devise of real estate to the nonresident alien brother of the testatrix: "At the time of her death he, as an alien, resident of England, was incapable of taking any interest in real estate...."

We conclude that by the law of this state a nonresident alien is incapable of taking title to real estate located here either by purchase or devise, or otherwise, except as provided in §§ 7166 and 7167 of the General Statutes or by treaty, and that, therefore, a devise of real estate to him is void.

The defendants contend that, even if that is so, under the common law the nonresident alien will take the property subject only to the right of the state to take it from him by escheat. Some support for that contention is found in *Evans' Appeal*, 51 Conn. 435. In that case the testator had left his widow the life use of all his property and had made no disposition of the remainder. His heirs were nonresident aliens. We said (p. 440): "[A]nd the real estate is in the keeping of the executrix as trustee for the state if it determines to enforce the escheat; for the alien next of kin if it waives it and removes their disabilities, as presumably it will." In that case, however, all the heirs were nonresident aliens and there was no other person who could take. For that reason the statement quoted is not relevant to the situation now before us, where there is an heir capable of taking.

It is fundamental that escheat to the state operates only when there is no person who can take title. General Statutes § 7078; 19 Am. Jur. 386, § 14. It is equally fundamental that, in the event that a bequest or devise of the rest, residue and remainder of an estate is void, the property goes to the next of kin or the heirs at law. The theory of our law with reference to devises of real estate to nonresident aliens is different from that upon which the common law of some other jurisdictions is predicated. As was pointed out in the quotation from 6 Thompson, Real Property (Perm. Ed.) page 275, set forth earlier in the opinion, the theory of the common law in other jurisdictions is that a purchase by or devise to an alien is valid but is subject to defeasance by the sovereign. Our theory is that such a purchase or devise is void. Accordingly, under our theory it would be illogical to hold that it requires action by

the state to enforce an escheat in order to defeat such a devise. The devise is void ab initio. The property goes to the next person in line who is capable of taking it.

The defendants seek to avoid the effect of the rule that a devise to a nonresident alien is void by contending that, since the testator's real estate has been sold, it should be treated as personal property by virtue of the doctrine of equitable conversion. This contention also is without merit. The will contained no direction to sell, as did the will which was involved in *Emery* v. *Cooley,* 83 Conn. 235, 238, 76 A. 529, the case relied upon by the defendants. There is nothing to indicate an intention on the part of the testator that the real estate should be converted into cash. Under the circumstances, the doctrine of equitable conversion does not apply. *State* v. *Thresher,* 77 Conn. 70, 81, 58 A. 460; *Pond* v. *Porter,* 141 Conn. 56, 68, 104 A.2d 228.

There is no error.

In this opinion the other judges concurred.