MARGARET LIBERO ET AL. *v.* THE LUMBERMENS MUTUAL CASUALTY COMPANY

INGLIS, C. J., BALDWIN, WYNNE, DALY and SHEA, Js.

Argued February 8—decided March 13, 1956

*Isadore Chaplowe* and *James R. Greenfield,* for the appellants (plaintiffs).

*David M. Reilly,* with whom was *David M. Reilly, Jr.,* for the appellee (defendant).

INGLIS, C. J. In this action the plaintiffs seek to recover from the defendant, as an insurer against public liability of an automobile owned by George Bodnar, the amounts of judgments rendered in their favor against James Harris for damages for per-

sonal injuries sustained by them by reason of the negligent operation of the insured automobile by Harris. They base their case on the claim that Harris was an additional insured under the policy. The principal question on this appeal is whether the trial court erred in setting aside the plaintiffs' verdict because of claimed errors in the charge.

The material facts claimed to have been proved by the plaintiffs are the following: On January 14, 1948, the four plaintiffs recovered judgments in various amounts against James Harris for personal injuries sustained by them as a result of the negligence of Harris in the operation of an automobile owned by George Bodnar. These judgments have not been paid. At the time of the accident in which the plaintiffs were injured, Bodnar was insured by the defendant under a public liability policy on that automobile. The policy provided that the "word 'insured' . . . includes [not only] the named insured [but also] any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use . . . is with the permission of the named insured. [The provisions of this paragraph do not apply] to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station or public parking place, with respect to any accident arising out of the operation thereof."

The accident in which the plaintiffs were injured occurred on July 4, 1944. At that time Harris was employed by Leo J. Blumenfield in the latter's garage to do various jobs such as greasing, but he was not a mechanic and was not employed to make major repairs such as the repair of an oil pump. Since July 4 was a holiday, the garage was closed except

for parking, and parts and tools used for making repairs were locked up. Bodnar regularly stored his car in Blumenfield's garage and on the day in question he asked Harris, who was then in the garage, to fix his oil pump. Harris agreed and in the course of the conversation said, "I may have to take this car out to test it to see if the pump works." To this Bodnar assented. It was agreed that the car would be ready about 4 o'clock in the afternoon. At about half past four, Harris, driving Bodnar's car with a woman passenger, collided with an automobile in which the plaintiffs were riding at a place about a mile from the garage.

The defendant claimed to have proved the following facts: Bodnar had parked his car in Blumenfield's garage for a period of about two years. From time to time he had had repairs made to it by Blumenfield's employees and had been charged for such repairs. On occasions prior to July 4, 1944, he had seen Harris in the garage. On July 4, 1944, the garage was open for business and Harris and two other employees were on duty under pay of Blumenfield. There were tools in the garage which were not locked up. Bodnar had not been told that no employee of Blumenfield would work to repair his car on the holiday.

From the pleadings and the claims of proof, it is apparent that the issues before the jury were whether at the time of the accident the actual operation by Harris of Bodnar's automobile was with the latter's permission and whether, in operating the car, Harris was doing it as the employee of an automobile repair shop or public garage.

The trial court in its charge recognized that these were the issues and at one point flatly instructed the jury: "If you find that Harris at the time of the

accident was using the Bodnar car on an errand or frolic of his own, or if Harris was using the Bodnar car as an employee of the garage owner, Blumenfield, then you cannot find in favor of the plaintiffs and your verdict must be for the defendant." This, however, followed a rather lengthy passage in which the court indicated to the jury that it was for them to determine whether there was any ambiguity in the provisions of the policy extending coverage to additional insureds and that if it appeared to them that there was such an ambiguity, it was incumbent upon them to interpret the policy. The passage contained instructions as to general principles governing the construction of contracts and included the following: "But, if you find an ambiguity in the terms, then it is a common principle that any ambiguous provision must be construed in favor of the assured so as not to defeat without plain necessity his claim to indemnity." At another point this was said: "However, if you find there are two ways of interpreting an insurance policy it must be interpreted most strongly against the insurance company . . . ."

After the jury returned a verdict for the plaintiffs, the court came to the conclusion that its charge had been erroneous and, on motion, set the verdict aside for that reason. From that action the plaintiffs have appealed.

It is proper for a trial court to set aside a verdict when it discovers that it has, in its charge, "made . . . a palpable error which was harmful to the proper disposition of the case and probably brought about a different result in the verdict." *Munson* v. *Atwood,* 108 Conn. 285, 288, 142 A. 737; *Marcil* v. *A. H. Merriman & Sons, Inc.,* 115 Conn. 678, 680, 163 A. 411.

There can be no question that the court's charge was erroneous in its instruction to the effect that if the jury found any ambiguity in the policy in suit, it was for them to resolve that ambiguity and interpret the policy. The interpretation of contracts is the function of the court. It is the court's duty, at least when the interpretation of a contract does not depend on facts extrinsic to the contract, to construe the provisions of any contract which is in suit and instruct the jury as to the correct interpretation. *Spurr's Appeal,* 116 Conn. 108, 111, 163 A. 608; *Mills* v. *Roto Co.,* 104 Conn. 645, 647, 133 A. 913. Nor can there be any real doubt that the erroneous instructions were influential in producing a plaintiffs' verdict since, without them, a different result might have been reached. When the jury were told that it was for them to resolve any ambiguity which they might find in the policy in favor of the plaintiffs and against the insurance company, they might well have taken that to mean that if they could not understand the provisions of the policy relating to additional insureds, they were free, and indeed ought, to find that Harris came within the coverage of the policy if their sense of justice indicated that he should. Manifestly, the instructions constituted harmful error which had its effect upon the verdict. The action of the trial court in setting aside the verdict was correct.

The plaintiffs and the defendant have assigned error to various paragraphs of the finding setting forth the claims of proof. None of these assignments have any merit.

The defendant has also filed its bill of exceptions claiming error in three portions of the charge and in the granting of a motion to expunge several paragraphs of its rejoinder in which it had alleged, in

substance, that the plaintiffs' claim that Harris had been operating the car with Bodnar's permission had been adjudicated against the plaintiffs in the action in which judgments were rendered in their favor against Harris but in favor of Bodnar. The portions of the charge complained of in the bill of exceptions were not erroneous.

The question whether the court erred in expunging a portion of the rejoinder is not one which may properly be raised by a bill of exceptions. Section 410 of the Practice Book, which governs the procedure on bills of exception, provides that such bills may be directed at "any rulings or decisions of the court in the course of the trial, or the charge to the jury . . . ." The purpose of a bill of exceptions "is not to obtain a review of errors committed in the progress of the cause as upon appeal, but to provide by way of anticipation for the conduct of a new trial which shall not fail by reason of doubtful questions upon which the presiding judge may be required to act." *State* v. *Thresher,* 77 Conn. 70, 77, 58 A. 460; *Cottrell* v. *Cottrell,* 106 Conn. 411, 422, 138 A. 458; *Equitable Life Assurance Society* v. *Slade,* 122 Conn. 451, 462, 190 A. 616. The motion to expunge a portion of the rejoinder was, of course, acted upon long in advance of the trial of the case. Whether the granting of the motion was proper will not be brought up for decision upon the retrial. Accordingly, we will not pass on this question.

There is no error.

In this opinion the other judges concurred.