FRANK N. ROBINSON ET AL., TRUSTEES (T. H. CANTY AND COMPANY, INC.) *v.* ANNA WEITZ ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued February 5—decision released September 14, 1976

*Jordan R. Lustig,* for the appellants-appellees (defendants).

*Joseph E. Meuser,* with whom was *Kenneth J. Damato,* for the appellees-appellants (plaintiffs).

Longo, J.    The defendants, Anna Weitz, Bertha Schwartz, and the S and W Holding Company, own an office building located in Norwalk.  On June 20, 1966, the defendants leased that building to T. H. Canty and Co., Inc., an insurance company that invested in and managed real property.  On December 15, 1971, the shareholders voted to liquidate T. H. Canty and Co., Inc., and a certificate of

dissolution was filed with the secretary of the state on November 21, 1972. Therefore, although this action was brought by T. H. Canty and Co., Inc., the trustees appointed to liquidate the company have been substituted for it as plaintiffs.

The term of the lease between the parties was from July 1, 1966, to January 31, 1978, with an option in T. H. Canty and Co., Inc., to renew the lease for an additional period of ten years. On May 16, 1972, T. H. Canty and Co., Inc., notified the defendants that it intended to assign the lease to Frank, Ralph and Robert DiNardo. T. H. Canty and Co., Inc., presented financial statements of the proposed assignees and requested that the defendants give written consent to the assignment. By letter dated May 22, the defendants noted that most of the proposed assignees' assets were real property subject to mortgages, and requested that the financial statements be certified by a certified public accountant and that information as to net income of the assignees be provided. Notwithstanding the defendants' request, T. H. Canty and Co., Inc., did assign the lease to the DiNardos in an agreement dated May 26, to be effective on June 1, 1972. The defendants informed T. H. Canty and Co., Inc., in letters dated May 30 and June 1, that the assignment made without the defendants' written consent violated the terms of the lease.

Subsequently, about June 26, the defendants received individual and joint financial statements of the assignees. One of the DiNardos had prepared all three individual statements and had provided the information used to prepare the joint statement. Attached to the joint statement was Note D, which stated: "Estimated values disclosed in this report

have been determined by Ralph, Robert and Frank DiNardo based on ten times annual net rentals or appraised values." Also attached was a letter from a firm of certified public accountants which stated: "Estimated values have been determined as outlined in Note D attached hereto. We express no opinion on the amounts shown as estimated values. Assets and Liabilities could exist which would not necessarily be revealed by our examination because of the lack of accounting records and control over the acquisition and disposition of personal liabilities. Because of the possible material effect of such items, if any, we are unable to express an opinion on the accompanying Statement of Assets and Liabilities."

On August 2, the defendants notified T. H. Canty and Co., Inc., that because it had violated the terms of the lease by the assignment, the defendants had elected to terminate the lease. The defendants gave notice to T. H. Canty and Co., Inc., to quit possession of the office building on or before August 26.

T. H. Canty and Co., Inc., brought an action requesting that the court declare that the assignment was valid, order the defendants to give written consent to the assignment, enjoin against the institution by the defendants of a summary process action against T. H. Canty and Co., Inc., and award to T. H. Canty and Co., Inc., damages and "[s]uch other relief which the Court may deem appropriate." In addition to alleging seven special defenses, the defendants filed a cross complaint in which they requested a judgment declaring the assignment invalid and declaring the lease to be in default and therefore terminated. The trial court found the issues for the defendants on the com-

plaint, but found the issues for the plaintiffs on the cross complaint, holding that although the assignment was invalid the lease was not terminated. The defendants have appealed from the judgment rendered for the plaintiffs and the plaintiffs have cross appealed from the judgment rendered in favor of the defendants. The parties have made numerous assignments of error. As to the plaintiffs' assignments, many have not been briefed and are therefore considered abandoned, and several requested corrections to the finding will not be made because they are not material to the outcome of the case. See *Lonergan* v. *Connecticut Food Store, Inc.*, 168 Conn. 122, 134, 357 A.2d 910, and the citations contained therein. The issues raised by the plaintiffs' remaining assignments and by the defendants' assignment of errors are considered in the opinion.

We first consider whether the trial court erred in holding the assignment invalid.

Paragraph five of the lease between T. H. Canty and Co., Inc., and the defendants provided: "Tenant may, without being relieved of liability or responsibility, sub-let or sub-lease premises or any part thereof, without the necessity of procuring the Landlord's consent therefor. However, it is expressly agreed between the parties that Tenant may not assign this Agreement without first procuring the consent of the Landlord in writing, which consent will not be unreasonably withheld provided assignee is of good character and financially responsible." Generally, where a lease simply provides that the lessor's written consent to an assignment is required, the lessor may refuse consent and his reason is immaterial. See *Segre* v. *Ring*, 103 N.H. 278, 279, 170 A.2d 265, and the citations contained

therein. If, however, the terms of the lease also provide that the lessor's consent to an assignment will not be unreasonably withheld, the lessor may not arbitrarily refuse his consent where the proposed assignee is an unobjectionable and responsible person. See the cases cited in 49 Am. Jur. 2d, Landlord and Tenant, § 423 and in annot., 31 A.L.R.2d 831, 835 § 4.

From the record in this case, it is clear that the defendants were concerned with the financial responsibility of the proposed assignees and that the assignees' character was not at issue. The plaintiffs contend that in view of the information contained in the financial statements and presented at trial, the financial responsibility of the assignees was established. It is unnecessary to consider the many findings of the trial court relating to testimony as to financial responsibility. We note, however, that there was considerable conflict in the testimony at trial relating to the valuations placed upon the real property owned by the assignees and the methods used by them to arrive at those valuations, and that the trial court concluded that the evidence was insufficient to establish financial responsibility. In view of the nature of the assignees' assets and the fact that the assignees' financial statements were based upon values they themselves had given those assets, the defendants' request for certification of the statements was not only in accordance with prudent business practice, but was certainly reasonable. It was the unchallenged finding of the trial court that the requested certified statements were not received prior to the assignment, and that the certified public accountants stated by letter, after the assignment was made, that they were unable to express an opinion on the state-

ments. The finding of facts amply supports the trial court's conclusions that the defendants were not given satisfactory proof of the assignees' financial responsibility and, therefore, that consent to the assignment was not unreasonably withheld. See *Brauer* v. *Freccia,* 159 Conn. 289, 293, 268 A.2d 645. As by the express terms of the lease the defendants' written consent was required prior to assignment and the defendants acted reasonably in refusing consent, the trial court did not err in holding the assignment invalid.

We next consider whether the trial court erred in holding that the lease was not terminated.

The lease which is the subject of this action was introduced into evidence and is part of the record before us. A lease is a contract; *Cohn* v. *Fennelly,* 138 Conn. 474, 476, 86 A.2d 183; *DiCostanzo* v. *Tripodi,* 137 Conn. 513, 515, 78 A.2d 890; and its construction presents a question of law for the court. *Rogers* v. *Great Atlantic & Pacific Tea Co.,* 148 Conn. 104, 167 A.2d 712; *Libero* v. *Lumbermens Mutual Casualty Co.,* 143 Conn. 269, 275, 121 A.2d 622. In construing a lease the "controlling factor is the intent expressed in the lease, not the intent which the parties may have had or which the court believes they ought to have had. *Hansel* v. *Hartford-Connecticut Trust Co.,* 133 Conn. 181, 194, 49 A.2d 666; *Colonial Trust Co.* v. *Hilton, Inc.,* 111 Conn. 77, 83, 149 A. 513." *Ingalls* v. *Roger Smith Hotels Corporation,* 143 Conn. 1, 6, 118 A.2d 463. "[T]he lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible. *Perkins* v. *Eagle Lock Co.,* 118 Conn. 658, 663, 174 A. 77." Ibid.; *Lonergan* v. *Connecticut Food Store, Inc.,* 168 Conn. 122, 126, 357

A.2d 910. The trial court was correct in finding that paragraph five of the lease does not contain a provision for termination of the lease in the event of an assignment without written consent of the defendants. Paragraph twenty does, however, provide for termination of the lease by the lessor-defendants for a default by the tenant, T. H. Canty and Co., Inc., of *any* of the terms, conditions or covenants contained in the lease.[1] As that paragraph expressly applies to all conditions in the lease, it clearly includes the conditions pertaining to assignment included in paragraph five. Moreover, it has long been "[t]he common method in drafting leases . . . to gather some or all of the covenants, by reference, into a condition subsequent, an agreement by the parties, that a breach by the tenant of any or all of the covenants on his part shall give the landlord the right to terminate the tenancy by means and in a manner usually indicated." *McPheeters* v. *Birkholz,* 232 Mich. 370, 376, 205 N.W. 196. Paragraph twenty of the present lease employs this method. We find, therefore, that the court erred in concluding that the lease did not

[1] Paragraph twenty reads in relevant part as follows: "20. In the event of default by the Tenant of any of the terms, covenants, and conditions of this Lease, . . . the Landlord shall have all and singular the following remedies, the same being cumulative. Said remedies shall not be alternative except at the election of the Landlord: (a) Terminating this Lease. Such termination may be accomplished by notice sent to the Tenant by registered mail addressed to Tenant. The Lease shall terminate on the day of mailing and the Landlord may thereupon enter the Demised Premises with or without force and remove all persons and property therefrom, and repossess themselves of the Demised Premises as of their former estate. (b) Terminating this Lease in the manner last aforementioned but not terminating the liability of the Tenant hereunder, which liability shall continue to the end of the Demised term. In such event the Tenant shall pay the reserved rent less any rent received by the Landlord upon a reletting, but the Landlord shall be under no duty to relet."

provide for termination upon the breach by T. H. Canty and Co., Inc., of the conditions in paragraph five.

Although there was no error in the trial court's holding that the assignment was invalid, the court did err in holding that the lease was not terminated.

There is error in part, the judgment for the defendants on the complaint is affirmed, the judgment for the plaintiffs on the cross complaint is set aside, and the case is remanded with direction to render judgment for the defendants on the cross complaint.

In this opinion the other judges concurred.