[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Introduction
This is a summary process case in which the plaintiff landlord seeks to evict the defendant tenant for nonpayment of December 1990 rent for the premises known as the "Town Sun Kitchen," located at 1764 Park Street, Hartford. The tenant occupies the premises under a five year lease dated December 8, 1986 with plaintiff's predecessor in title, Mansour Realty, at a monthly rental of $1080.00. The lease also allows the tenant to extend the tenancy for an additional five years at a monthly rental of $1310 per month. The lease indicates that the premises may not be sublet or assigned without the written consent of the landlord and that the landlord shall not withhold the consent unreasonably.
The plaintiff did not testify at trial resting on the admission of paragraphs one through six of the complaint.
The defendant testified that he has operated the restaurant for approximately 15 years with different landlords. He indicated he was not advised of the sale of the premises until the plaintiff attempted to collect the rent. He further stated that he had the phrase "the landlord shall not withhold the consent unreasonably" added to Paragraph four (the assignment clause) of the lease because he was concerned about his ability to operate the business as he grew older. Mr. Hom is now 77 years of age.
He also testified that various times during this lease he attempted to sell the restaurant but was unable to obtain the landlord's consent. His testimony was sparse on the "various times" with the exception of the incident in November 1990. At that time, he had a buyer who was willing to purchase the business for $35000.00.
He indicated that the plaintiff told the prospective buyer that the rent would be at least $1800.00 per month rather than the present amount of $1080.00. The buyer chose not to purchase the premises. Mr. Hom indicated that the equipment is worth perhaps $20,000.00 but that he is now unable to operate the business due to his ill health and advanced age. He closed the business at the end of November and has not operated since that time.
 II.
Discussion CT Page 3236
 A.
Twenty years ago, in the landmark case of Javins v. First National Realty Corp., 428 F.2d 1071 (1970), the United States Court of Appeals in finding an implied warranty of habitability in every residential lease held that under contract principles the tenant's obligation to pay rent was dependent upon the landlord's obligations to maintain the premises in a habitable condition. That decision reversed traditional common law theories of enforcement of real estate leases. The pendulum has been moving, albeit slowly, from the law of property to contract law ever since. We are no longer treating leases as simply independent covenants but are now viewing the provisions as mutually dependent covenants. But, as mentioned, the move has not been quick. Connecticut's common law, pre Javins, has not changed overnight. That view was succinctly stated in In re Edgewater Park Junior College, Inc., 123 Conn. 74, 77 (1937):
 A lease is primarily a conveyance of an interest in land. Its covenants are independent covenants. Thus apart from statute or express provisions of the lease, the tenant's nonpayment of the rent or other breach of covenant will not justify his eviction by the landlord. (citations omitted) The independent covenants are in effect separate unilateral obligations. Also, since the execution of the lease by the lessor may be said to constitute performance on his part, the lease for that reason may be considered a unilateral agreement. 3 Williston, Contracts (Rev. Ed.) 890, (1920 Ed.) 1329. A lease therefore, considered as a contract, is a unilateral agreement with no dependency of performance.
See also, Thomas v. Roper, 162 Conn. 343, 346, 1972. In 1983, in SHVC, Inc. v. Roy, 37 Conn. Sup. 579, 585, the Appellate Session continued to apply the independent covenant theory, rejecting the tenant's argument that the landlord's failure to provide heat to his billiard parlor allowed him to suspend payment of rent. That court noted that while there had been statutory modifications to the independent covenant rule for residential situations, General Statutes 47a-1 through 20, the common law still prevailed in commercial settings. Thus, as long as the tenant remained in possession, the only exception to the independent covenant rule, namely, eviction (whether actual or constructive ) did not apply.
Yet, our courts obviously recognized that a lease CT Page 3237 although a conveyance of an interest in land, In re Edgewater, supra, was still a contract. Robinson v. Weitz, 171 Conn. 545,551 (1976); Cohn v. Fennelly, 138 Conn. 474, 476 (1952); Sandrew v. Pequot Drug, Inc., 4 Conn. App. 627, 629 (1985). In 1989, the pendulum clearly and forcefully crossed over the center line with the recognition in Rokalor, Inc. v. Connecticut Eating Enterprises, Inc., 18 Conn. App. 384, 391
(1989) that:
 the "rules applying to contracts generally with respect to breach, the right to damages for breach, and the measure of damages, apply to leases as well as contracts." 49 Am.Jur.2d, Landlord and Tenant 176. It is a general rule of contract law that a total breach of the contract by one party relieves the injured party of any further duty to perform further obligations under the contract. (citations omitted).
In Rokalor, supra, the court addressed the issue of whether in a commercial lease post eviction damages are allowed. The defendant argued that as a summary process action had been instituted and judgment rendered, the tenancy was terminated and the tenant was relieved from all obligations under the lease including that to pay rent. Feneck v. Nowakowski, 146 Conn. 434, 436 (1959). The court rejected this position. It held that where the landlord elects to terminate the tenancy to regain possession, while it may not institute an action for rent due under the lease, it may sue for breach of the lease.[1] "Where the action is one for breach of the lease, basic contract principles apply." Rokalor supra, 389. As the present case is also a commercial lease, it must be viewed in light of contract law.
The alleged breach in this case is the landlord's failure to consent to the assignment. The plaintiff never testified and never introduced any evidence to rebut Mr. Hom's testimony concerning the proposed assignment. This could certainly be deemed a "tacit admission." Obermeier v. Nielsen,158 Conn. 8, 11 ( 1969). The evidence indicated that the consent would have been given only if the terms of the lease were substantially changed.
The court notes that there are two types of consent provisions: (1) those that simply require the landlord's consent and (2) those that while requiring consent preclude the landlord from withholding it unreasonably. Traditional common law allowed the landlord in the first group to refuse consent with his reason being immaterial. Jones v. O'Connell,189 Conn. 648, 653 (1983); Danpar Associates v. Somersville Mills CT Page 3238 Sales Room, Inc., 182 Conn. 444, 447 (1980); Robinson v. Weitz, supra, 549. It must be noted, however, that as the law does not favor restraints on alienation, Jones v. O'Connell, supra, 653; Aiello v. Austrian, 2 Conn. App. 465, 467 (1984), courts nationwide are now rejecting this majority view. They are now holding that where consent is required it, "may be withheld only where the lessor has a commercially reasonable objection to the assignment even in the absence of a provision in the lease stating that consent to assignment will not be unreasonably withheld." Kendall v. Ernest Pestana, Inc.,709 P.2d 837, 841 (Cal. 1985) citing the Restatement 2d Property 15.2(2) (1977) and other citations.[2] One of the forces driving the abandonment of the majority rule is the notion that a lease is more than the conveyance of land, it is a contract. Rokalor, supra 391. Thus "[i]n every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. . . ." Kendall, supra, 844, citing Universal Sales Corp. v. Cal etc. Mfg. Co., 128 P.2d 665 (1942). Denying consent to an assignment in order that the landlord may charge a higher rent has therefore been held unreasonable. Kendall, supra; citations omitted.
In the present case the lease falls into the second category with the stated requirement that the consent may not be unreasonably withheld. The court has, of course, heard Mr. Hom's testimony that the clause was specifically added to the lease because he was concerned about his inability to continue to operate the restaurant due to his age and health. "In construing a lease the controlling factor is the intent expressed in the lease. . . ." Robinson v. Weitz, supra, 551, citing Hansel v. Hartford-Connecticut Trust Co., 133 Conn. 181,194 (1946) and other cases. The plaintiff would certainly be allowed to withhold consent if the proposed assignee was not financially responsible. Robinson v. Weitz, supra, 550. That, however, is not the case herein. The only reason that consent was withheld was that the landlord wanted a higher rent. As mentioned, that is an improper reason.
 C.
The facts of the present case are quite similar to that of Ringwood Associates, LTD. v. Jack's of Route 23, Inc.,398 A.2d 1315 (N.J. 1979). In that case, the tenant also abandoned after the landlord refused to give consent to an assignment. Moreover, the landlord therein sought to increase the assignee's rent rather than allow the assignee to assume the existing terms. The printed lease therein had been modified by the addition of the phrase "without the consent of the CT Page 3239 landlord, which consent shall not be unreasonably withheld" to the prohibition on assignment. The trial court found and the Appellate Court agreed that the addition of the phrase was not inconsequential. Moreover, it noted that the landlord was entitled to treat the breach of any covenant as allowing reentry. (The subject lease at paragraph 17 has a similar clause.) The court therefore held:
 Our conclusion that the tenant has an equal right to terminate on breach of a material covenant is therefore not disharmonious with but rather coordinate to and mutual with the landlord's express contractual remedies. Id., 1319.
That conclusion is consistent with the Restatement Property 2d 15.2 at 106 comment (h) ( 1977) which in addressing the consent clause states, inter alia, "[s]uch specific provision in the lease is a promise and upon its breach the other party will be entitled to all the remedies available for a breach of a promise . . . including the right to terminate the lease."
 D.
This court is in agreement with the trial court in Ringwood, supra, that contract law and not property law should govern this matter. Under the former, the tenant would have no right to terminate a lease and vacate upon a breach by the landlord in unreasonably withholding consent. "However, under generally accepted principles of contract law, if there is a substantial breach of a material mutually dependent covenant in a bilateral contract, the injured party is excused from further performance." Ringwood Associates v. Jack's of Route 23,379 A.2d 508, 514 (NJ. Super Ct. 1977) (citations omitted). This court finds that the added language to the present lease requiring consent to not be unreasonably withheld was an integral part of the contract. The plaintiff's withholding of that consent through the demand of a much higher rent was unreasonable and a breach of the lease.
 E.
Both parties have briefed this case in light of our Supreme Court's recent decision in Fellows v. Martin,217 Conn. 57 (1991), which re-emphasized the principle that this court could use its equitable power to prevent a forfeiture in a summary process case. As a result of the above findings, this court need not use those powers. CT Page 3240
 III.
Conclusion
In Rokalor, supra, 391, court held that contract rules apply to damages for breach of a commercial lease. Again, as noted by the trial court in Ringwood, supra, 516, "it would be inconsistent and illogical for this court to hold that other principles of contract law, relating to remedies for breach of performance, should not apply when there is a breach of lease by either party. In addition to the need for consistency, equity and fairness dictate such a result." Accordingly, judgment shall enter for the defendant.
Berger, J.