[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION MOTION TO DISMISS
On September 13, 1994 this court rendered an oral decision from the bench on the defendant's Motion to Dismiss dated August 26, 1994. On November 3, 1994 the defendant's Motion for Articulation requesting that the decision be articulated in writing was granted by this court. This memorandum is being issued in response to the Motion for Articulation.
This is a summary process action involving commercial premises. The defendant claims lack of jurisdiction over the subject matter in accordance with P.B. § 143(1). Although the motion to dismiss itself does not specify the exact grounds, the plaintiff argues the court does not have subject matter jurisdiction in that the defendant is not nor has it been actual physical possession of the premises and under these circumstances the allegations of non payment of rent in the Notice to Quit is insufficient for this court to have subject matter jurisdiction.
The Motion to Dismiss shall be used to assert the lack of CT Page 1214-CC jurisdiction over the subject matter. The Southport Manor ConvalescentCenter, Inc. v. Foley, 216 Conn. 11, 12, (1990); Practice Book § 143.
Jurisdiction over the subject matter cannot be waived or conferred by consent. Serrani v. Board of Ethics, 225 Conn. 305, 308 (1993). Once the question of lack of jurisdiction of a court is raised, it must be disposed of no matter in what form it is presented and the court must fully resolve it before proceeding with the case. Castro v. Viera,207 Conn. 420, 433-434 (1988). The issue of subject matter jurisdiction may be raised at any time, even on appeal. Concerned Citizens of Sterlingv. Sterling, 204 Conn. 551, 556-557 (1987). The court must decide the issue of subject matter jurisdiction even if not raised by the parties.Tucker v. Maher, 192 Conn. 460, 469 (1984). It may be raised not by the parties but by the trial court. Manley v. Pfeiffer, 176 Conn. 540, 545
(1979). It may be raised by the Appellate Court. Rich TaubmanAssociates v. Harwyn Stamford, Inc., 35 Conn. App. 296, 299 (1994). It may be raised by the Supreme Court. Kolenberg v. Board of Education,206 Conn. 113, 122 (1988).
A motion to dismiss admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. Youngv. Chase, 18 Conn. App. 85, 90 (1989). The complaint is to be construed CT Page 1214-DD most favorably to the plaintiff. Duguay v. Hopkins, 191 Conn. 222, 227
(1993). In evaluating the sufficiency of the plaintiff's complaint we presume the validity of the allegations. Young v. Chase, supra 90. The motion to dismiss cannot consider matters not contained in the pleadings unless the evidence is brought to the court's attention in a court hearing conducted for that purpose. Standard Tallow Corporation v.Jowdy, 190 Conn. 48, 55 (1983). Under certain circumstances affidavits can be provided for the court to consider as to facts not apparent on the record. Practice Book § 143.
In determining whether to grant a motion to dismiss, the inquiry usually does not extend to the merits of the case. Rhodes v. Hartford,201 Conn. 89, 92 (1986); Lampasona v. Jacobs, 209 Conn. 724, 728 (1989).
The plaintiff, One Sylvan Road North, leased in 1986 the premises in question located in Westport, Connecticut to Lindblad Travel. Simultaneously Lark International Ltd., the defendant, executed a guarantee of the plaintiff's lease with Lindblad Travel. In accordance with the guarantee the defendant, Lark International Ltd., was required to perform the obligations of Lindblad Travel pursuant to the 1986 lease. The 1986 lease granted to Lindblad Travel certain options CT Page 1214-EE including an option to purchase the premises.
On March 1, 1990 Lindblad Travel vacated the premises they had occupied under 1986 lease. The plaintiff, One Sylvan Road North and the defendant, Lark International Ltd., entered into various agreements thereafter.
One agreement dated November 29, 1993, on file in this matter, is a lease between One Sylvan Road North and Reach Marketing, Inc. Reach is now in possession of the premises pursuant to that agreement. The defendant, Lark International Ltd., executed that November 29, 1993 lease agreement. Article 38 of that lease relates to the rights and obligations of Lark International Ltd. and further states that Lark International Ltd. acknowledged that Lark had succeeded to the rights and assumed the obligations of the former tenant, Lindblad Travel.
The pleadings further state that since Lindbald Travel no longer had occupancy, Lark has been paying the rent and additional rent to the plaintiff. There is no evidence that the plaintiff and Lindblad Travel had terminated its lease prior to the November 29, 1993 new lease agreement between the plaintiff, defendant and Reach Marketing, Inc. CT Page 1214-FF
The 1986 lease guarantee gave the defendant the right to step into the shoes of the tenant Lindblad Travel. The defendant did so and paid rent. The defendant, although not taking possession, paid rent and assumed obligations under the lease. The defendant executed an agreement to permit Reach Marketing Inc. to occupy the premises thus further emphasizing the substantial rights the defendant still retained in the property in question.
The first reason set forth in the Motion to Dismiss is that the "non payment of rent when due" reason set forth in the Notice to Quit, under the facts of this case, deprives the court of subject matter jurisdiction. Summary process is a statutory action and must be strictly construed. Jo Mark Sand Gravel Co. v. Panatella, 139 Conn. 598,600-601 (1953). Connecticut General Statutes § 47a-23 states that one of the statutory grounds for a Notice to Quit is "non-payment of rent". Therefore the Notice to Quit on its face states a valid reason.O'Keefe v. Atlantic Refining Co., 132 Conn. 613, 621-622 (1946);Bongiovanni v. Reardon, H-313; Webb v. Ambler, 125 Conn. 543, 553
(1939); Harrison v. Williams, H-537; Rosato v. Keller, H-45, 5 CLT 325, p. 18. CT Page 1214-GG
The second reason set forth in the motion to dismiss is that the defendant is not in occupancy or possession and thus there is no landlord tenant relationship. Continuing this argument the plaintiff states that "non-payment of rent" is not a valid reason if there is no obligation to pay rent. Rent is a contract payment. There must be a contract, a meeting of the minds, for rent to be due. Welk v. Bidwell,136 Conn. 603, 606-607 (1950). Therefore the defendant argues there is no contract, no rent is due and there can be no eviction. Alteri v.Layton, 35 Conn. Sup. 384, 385 (1979). H-36, May 9, 1979 (Spada, J.)
The documents on file and the pleadings show sufficient information that the defendant as guarantor had the right to assume the rights and obligations of the named tenant, Lindblad Travel, in 1986 lease. They also show that without the 1986 lease being terminated the defendants stepped in and assumed the obligation to pay rent, actually paid rent and therefore assumed the other rights and obligations of the lease. The Reach Marketing Inc. lease states as follows; "Tenant acknowledges that he has been informed and understands that as a consequence of defaults on the part of the tenant named in said prior lease, Lark has been called upon to perform obligations of the former tenant, that Lark CT Page 1214-HH has succeeded to the rights and assumed the obligations of the former tenant, and the right of the former tenant to occupy the premises has been terminated." Lark signed that agreement.
The plaintiff and the defendant, after Lindblad Travel vacated the premises, entered into two separate modification agreements. The modification agreement signed by the plaintiff and the defendant dated October 4, 1993 stated, "The purpose of this agreement is to confirm in the guarantor the same economic benefits, rights, powers, obligations and liabilities that would flow to it and would impose upon if it were the tenant under the lease." The defendant, Lark International Ltd., signed this agreement as guarantor. On January 15, 1994 the defendant signed a similar modification agreement with the plaintiff which contained the identical language stated above.
The defendant further confirmed it's tenant status in Article 38 of the November 23, 1989 Reach Marketing Inc. lease. Furthermore in Article 15 of the modification agreement dated January 15, 1994 the defendant agreed to pay rent and the failure to pay that rent is the subject of this lawsuit. The Notice to Quit states "non-payment of rent when due." CT Page 1214-II
The defendant is therefore a tenant under a landlord tenant relationship. There was a meeting of the minds of the parties confirmed in writing and reconfirmed in writing on two other occasions. The defendant complied with the terms of all those writings until just before the institution of this summary process proceeding. The defendant is a tenant and thus is subject to the eviction procedures of Connecticut General Statutes § 47a-23. Welk v. Bidwell, supra 606; Webbv. Ambler, supra 553. A "tenant" unless otherwise defined by statute is not limited to a formal landlord-tenant status or that arising out of a rental contract, Rivera v. Santiago 4 Conn. App. 608, 610 (1985).Southington v. Francis, 159 Conn. 64, 69 (1970).
An earlier version of the notice to quit statute was "An Act Concerning Summary Process" which amended § 1355 of the Revision of 1888. It provided under what circumstances an action in summary process might be brought. Public Acts 1895, C. 124. "Section 1355 originally and as amended in 1895 authorized summary process only in cases in which a `lessee' was in possession of leased premises." Southington v. Francis,
supra 69. "It is to be noted that by subsequent amendments the scope of summary process actions has been greatly expanded beyond situations CT Page 1214-JJ where the parties stood in the relationship of lessor and lessee."Southington v. Francis, supra 69, n2.
Further the defendant argues that the defendant is not a tenant because it does not have occupancy or physical possession of the premises and never had occupancy or physical possession of the premises. The facts show that the defendant had the right to possession under its guarantee and after Lindblad vacated the premises, assumed Lindblad Travel's rights. The defendant paid rent of its own choice and did not occupy even though it had every right to occupancy. This allegation by the defendant is not supported by case law, is not justified by the facts of the case and does not deprive the court of subject matter jurisdiction.
Furthermore the defendant argues that since it has no occupancy or right of occupancy and thus was not a tenant under a landlord tenant relationship, no practical relief can result from this law suit. In effect the defendant claims that the matter is moot. The court can only consider justiciable issues.
"It is a well-settled general rule that the existence of an CT Page 1214-KK actual controversy is an essential requisite to . . . jurisdiction; it is not the province of . . . courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow . . . . Reynolds v. Vroom, 130 Conn. 512, 515 (1944). In the absence of an actual and existing controversy for us to adjudicate . . . the courts of this state may not be used as a vehicle to obtain judicial opinions upon points of law . . . and where the question presented is purely academic, we must refuse to entertain the appeal . . . ." First Trust National Association v. Hitt, 36 Conn. App. 171, 175 (1994); Delevieleuse v. Manson, 184 Conn. 434, 436 (1981). (Internal citations deleted).
A well-established exception to the mootness rule is where the issue is "capable of repetition, yet evading review." Board of Educationv. Board of Labor Relations, 205 Conn. 116, 126 (1987). The following factors have been held to be relevant in determining if the issue should be decided even though it may have no immediate practical consequences to a party, i.e, whether the issue (1) could affect an ongoing program of the state penal or civil system, (2) could affect the complaining CT Page 1214-LL party in the future and (3) involves a matter of public importance. "No one factor is controlling, nor must all of the above factors be present to decide the applicably of the exception. We must instead review the circumstances of each case." Goodson v. State, 228 Conn. 106, 114
(1993). First Trust National Association v. Hitt, supra 176.
Therefore both the mootness issue and the capable of repetition, yet evading review exception is fact sensitive. First Trust NationalAssociation v. Hitt, supra 176.
Under the mootness analysis and the above stated exception the facts of this case result in a determination that the issues are not moot and if moot meet all three factors of the capable of repetition yet evading review exception.
There is an actual controversy among the parties. The documents which are referred to relate to the current period and the future of the premises. This court has already found that the status of the plaintiff and defendant is of landlord and tenant. Although the defendant is not in occupancy it has the right to step into the shoes of CT Page 1214-MM the occupant. It has the right to ultimate possession by the documents on file, i.e. an option to purchase the fee title to the premises. The issue is therefore whether by the acts of the defendant in not paying rent under equitable circumstances may its future right of possession be terminated in this summary process case, i.e. its right of future occupancy and its right to exercise the option to purchase. The issues are not moot. Although actual immediate physical possession cannot be conferred to the plaintiff by reason of this law suit, this action will determine the rights of the parties as to the future title and possession of the premises. This court therefore has subject matter jurisdiction to hear this summary process case involving these issues.Rosa v. Cristina, supra 365. Hartford Wheel Club v. Travelers Ins. Co.,78 Conn. 355, 358 (1905).
In addition all three factors of the capable of repetition yet evading review exception to the mootness doctrine are present.
The state court system by judicial gloss has decreed that Housing Sessions can hear and decide complex issues arising out of landlord-tenant or owner-occupancy relationships. Fellows v. Martin, 217 Conn. 57, CT Page 1214-NN 67 (1991). Southland Corporation v. Vernon, 1 Conn. App. 439, 449
(1984). The old limitations have been held to be obsolete. To dismiss this case involving what is in essence a lease and future occupancy dispute over non payment of rent, which the defendant concedes must be paid by it to the plaintiff, is to take a giant step back in time and to invoke the "limited issues" summary process doctrine. Atlantic RefiningCo. v. O'Keefe, 131 Conn. 528, 531 (1945). Thus the state court system would be affected.
The party's rights in the future will be affected. This lawsuit will determine the rights of the parties as to future occupancy and the right of the defendant to exercise its option to purchase the property. The option price is $2,700,000 and this amount is sufficient to affect even the largest of business entities.
The third factor involves a matter of public importance. The ownership of real property is a matter of public importance. It is the public policy of the State of Connecticut that at all times the title ownership of real property must be known. Steves v. Smoker, 84 Conn. 571,575 (1911).
The court finds that this issue is not moot. CT Page 1214-OO
The defendant's argument as to mootness is also misplaced. This court has already had found that the defendant is a tenant under a landlord-tenant relationship. The rights of a tenant are well known in Connecticut. A tenant has statutory rights under Title 47a of Connecticut General Statutes. The Housing Session of the Superior Court protects tenants and landlords alike. C.G.S. § 47-68, C.G.S. §51-165(c). Tenants have common law rights including the right of quiet enjoyment, Argimvagu v. Larson Bros., 226 Conn. 484, 490 (1993); the right to erect buildings if permitted under the lease, The CollinsCompany v. Marcy, 25 Conn. 239, 241 (1856); to be protected by an agreement restricting the use of land, Harmonie Club, Inc. v. Smirnow,106 Conn. 243, 246 (1927); to be protected by the landlord's duty of good faith and fair dealing with the tenant, Warner v. Konover,210 Conn. 150, 155 (1989); a right to assign the lease, Hall v. Solomon,61 Conn. 476, 483 (1892); the right to enter into a contract to purchase, Warner v. Konover, supra 155; the right of noninterference by the landlord with contractual rights, Robinson v. Weitz, 171 Conn. 545,551 (1976); contract rights as set forth in the lease, Cohn v.Fennelly, 138 Conn. 474, 476 (1952). Among other contract rights are an option to purchase, an option to renew the lease, a right to assign the CT Page 1214-PP lease, a right to sublet the premises, the right to remove improvements upon the termination of the lease and the right of first refusal to purchase. Cumberland Farms Inc. v. Dairy Mart Inc.,1992 Conn. Sup. 5382 (June 12, 1992), Brauer v. Freccia,159 Conn. 289, 295 (1970).
All of these rights the tenants have under a lease.
Summary Process is a creature of statute. C.G.S. § 47a-23, Lorch v.Page, 97 Conn. 66, 72 (1922). Summary process itself does not terminate a lease but its basis is that a lease has terminated. Webb v. Ambler,
supra 555. A failure to pay rent does not by itself terminate a lease.Hartford Wheel Club v. Travelers Insurance Co., supra 358; SimsburyTurnpike Realty Co. v. Great Atlantic and Pacific Tea Co.,39 Conn. Sup. 367, 370 (1983). The failure to pay rent grants to the landlord the option of terminating the lease. Thompson v. Coe,96 Conn. 644, 651 (1921); Kovner v. Dubin, 104 Conn. 112, 118 (1926). The landlord must terminate the lease by an unequivocal act. Chapel-HighCorporation v. Cavallaro, 141 Conn. 407, 411 (1954). The service of a notice to quit is such an unequivocal act. Thompson v. Coe, supra 651. Other examples of an unequivocal act are demand, reentry or ejectment.Hartford Wheel Club v. Travelers Insurance Co., supra 358;Cohen v. Thorpe,
CT Page 1214-QQ1991 Ct. Sup. 1210 (February 21, 1991) (Melville, J.)
The older cases indicate that summary process is restricted to certain limited issues. Atlantic Refining Co. v. O'Keefe, supra 531. The purpose of the lawsuit is to move in a summary manner. Sandrew v.Pequot Drug, Inc., 4 Conn. App. 627, 631 (1985); Mayron's Bake Shops,Inc. v. Arrow Stores, Inc., 149 Conn. 149, 154 (1961). The pleadings advance more rapidly than an ordinary civil action. C.G.S. § 47a-26c. The older cases have stated "the ultimate issue in a summary process action is the right to possession." Rosa v. Cristina, 135 Conn. 364,365 (1949); Urban v. Prims, 35 Conn. Sup. 233, 236 (1979).
In 1979 the Legislature created the first Housing Session of the Superior Court. P.A. 78-365, C.G.S. § 47a-68. One of the purposes of the Housing Session was to develop a consistant body of law on housing matters. Judges of the Superior Court were assigned to Housing Session for a minimum of eighteen months, triple the normal judicial assignment.C.G.S. § 51-165(c).
Prior to 1961 summary process matters were heard by justice courts (municipal courts). Lorch v. Page, supra 68. Appeals were to the Court CT Page 1214-RR of Common Pleas. American Bonding Co. v. Hoyt, 88 Conn. 251, 255 (1914) There was no further appeal except by Writ of Error. Neither equitable nor legal counterclaims were available in summary process. AtlanticRefining v. O'Keefe, supra 530-531. Separate actions were required to raise equitable issues. Galvin v. Simons, 128 Conn. 616, 618 (1942).Banks v. Porter, 39 Conn. 307, 308 (1872). The Circuit Court obtained summary process jurisdiction in 1961 when the municipal courts were terminated. Finally in 1978 all the trial courts were merged into the Superior Court. C.G.S. § 52-2 to § 52-62a (repealed.) P.A. 77-497,P.A. 77-604. In Public Act 76-436, effective, July 1, 1978, the merged Superior Court was vested with the right to "administer legal and equitable rights and apply legal and equitable remedies." C.G.S. §52-1. The statute had previously read "All courts which are vested with jurisdiction both in law and equity . . ." P.A. 82-160.
Thereafter the Superior Courts have expanded the scope of summary process. Complex issues and equitable defenses were first discussed by the Circuit Court in 1979. "We are aware that the Circuit Court has equitable jurisdiction, but in the present case the defendant did not seek equitable relief. We do not decide whether an equitable defense is proper in a summary process action or whether a separate suit would be CT Page 1214-SS necessary to seek relief." Dreifus v. World Art Corp. Inc., 6 Conn. Cir. Ct. 307, 312 n. (1970). It was noted in Dreifus that waiver of the forfeiture of the covenant to pay rent was a proper defense in a summary process action before the Justice Court and the Court of Common Pleas.Fort Orange Barbering Co. v. New Haven Hotel Co., 92 Conn. 144, 149
(1917).
The Appellate Session of the Superior Court first discussed the authority of the Superior Court to hear and decide more complex issues and equitable defenses in summary process. Steinegger v. Fields,37 Conn. Sup. 534, 537 (1980). Steinegger arose out of a Stamford case. The court noted that "the legislature has given the recently established housing court in the judicial district of Hartford-New Britain, the authority to consider as `housing matters' `all actions for relief arising out of the parties relationship as landlord and tenant or owner and occupant.'" C.G.S. § 47a-68(h). Steinegger stated that the courts in the remaining judicial districts and geographical areas without housing sessions should have the same authority. Therefore waiver and estoppel or equitable defenses in summary process were permitted without the need to commence a separate Lawsuit seeking equitable relief.
In 1984 the Appellate Court rendered the opinion of SouthlandCT Page 1214-TTCorporation v. Vernon, 1 Conn. App. 439 (1981). Complex issues and equitable defenses were found to be proper in summary process actions. Southland involved the termination of a franchise which if properly terminated would have terminated the right of occupancy and future occupancy under the lease and thus provided the standard foundation of a summary process action. The trial court was required to interpret the Franchise Agreement Act C.G.S. § 42-133e, et. seq.
 "We recognized that summary process is a statutory proceeding which is intended to be summary and is designed to provide an expeditious remedy to landlord seeking possession. Prevedini v. Mobil Oil Corp., 164 Conn. 287, 292 (1973). Because of its summary nature the statute granting the remedy has been narrowly construed and strictly followed. Jo-Mark Sand Gravel Co. v. Pantanella, 139 Conn. 598, 600-601 (1953). Concomitant with its summary design the legislature has mandated a truncated return day and appearance date; General Statutes § 47a-23a and 47a-26; and that pleadings shall advance in three day steps. C.G.S. § 47a-26a and 47a-26c." Southland Corporation v. Vernon, supra 445.
It has also been stated in pre-Steinegger and Southland cases that CT Page 1214-UU "that the ultimate issue permitted in a summary process case, is the right to possession. Rosa v. Christina, supra 365. Urban v. Prims,
supra 236. This statement of the purpose of summary process predates the cases which, since the Superior Court merger and the establishment of the Housing Session, has broadened the scope of summary process proceedings. The more recent cases have permitted counterclaims.Plainville Police Department v. Plainville Redman Pequabuck Tribe 74,
H-497 (1983) (Aronson, J.), counterclaim for specific performance of a lease permitted in a summary process case: Filosi v. Hawkins,1 Conn. App. 634, 638-639 (1984), counterclaim to determine title being held pursuant to a constructive trust permitted in a summary process case which required an accounting to be rendered; Lane v.Boyd, NH-238, accounting to determine equitable set off in a summary process case.
Therefore a more correct statement of the ultimate issue in the summary process case is, who has the greater claim to title in the property subject to equitable considerations? Fellows v. Martin,217 Conn. 57 (1991). Zitomer v. Palmer, 38 Conn. Sup. 341, 344, 346 (1982).C.G.S. § 47a-27, C.G.S. § 47a-26d.
The underlying rationale for the ban on equitable issues in summary CT Page 1214-VV process proceedings arose from the jurisdictional limitations of the extinct justice courts. The more recent cases cited above concluded that the ban should be abolished. Southland Corporation v. Vernon,
supra 447. Fellows v. Martin, supra 67.
In 1991 the Supreme Court decided Fellows v. Martin, 217 Conn. 57, which approved equitable defenses in summary process cases. "We agree that there is no longer sufficient justification for the old prohibition against the application of equitable principles barring forfeitures to summary process, that the prohibition, arising from an obsolete system, is itself obsolete, and that equitable defenses and counterclaims implicating the right to possession are available in a summary process proceeding." Fellows v. Martin, supra 62. This language as applied to the issue of equitable defenses also applies to complex issues.
 "There have been significant developments in the law, however, which have necessarily and significantly dimmed the judicial gloss insofar as it concerns the claim of complexity. First the original basis for the limiting summary process to simple questions no longer obtains. That basis, articulated in Davidson v. Poli, 102 Conn. 692, 695 (1925) and tracing back CT Page 1214-WW to Dubouchet v. Wharton, 12 Conn. 522, 538 (1838), was that, since summary process action were traditionally tried by justices of the peace in city courts, the legislature did not intend them to embrace complicated legal or factual questions. Now, of course, they are all tried by judges of the Superior Court. Second, because of the merger of all trial courts into the Superior Court and the creation of the broad jurisdiction of its housing division, defenses involving complex equitable issues are now permitted. Mark I Enterprises, Inc. v. Sendele, 37 Conn. Sup. 569, 572 (1981); Steinegger v. Fields, 37 Conn. Sup. 534 (1980)." Southland Corporation v. Vernon,
supra 446-447.
These emunerated cases demonstrate that the present statutory scope of summary process clearly go far beyond cases involving only a few simple issues. Southland Corporation v. Vernon, supra 447. C.G.S. §47a-68. "Indeed, our perusal of several unreported housing division decisions, brought to our attention by the parties, issued in response to claims of undue complexity indicates that those judges are more than able to glean the wheat from the chaff and more than willing to shoulder their part of the burden under the broad jurisdictional grant of General CT Page 1214-XX Statutes § 47a-68". Southland Corporation v. Vernon, supra 451.
This court is willing to toil in those wheatfields, and decide this case in the Housing Session.
The Notice to Quit terminates the lease, Thompson v. Coe, supra 651. A judgment of summary process confirms that termination.
"The judgment in the summary process action effectively terminated the lease". Feneck v. Nowakowski, 146 Conn. 434, 436 (1959). Hamre v.Michael Etzel and Sons, Inc., 120 Conn. 129, 137 (1935).; Kovner v.Dubin, supra 118; Read v. Tuttle, 35 Conn. 25, 26 (1868).
The eviction of the lessee puts an end to the tenancy and releases the parties from the obligations under the lease. Feneck v. Novowkaski,
supra 436, 437.
The Motion to Dismiss is denied.
BY THE COURT
KEVIN TIERNEY, JUDGE CT Page 1214-YY