[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The dispute between the parties arises out of negotiations relative to a lease between the plaintiff-owner and the defendants, prospective tenants of commercial property located in West Haven, Connecticut.
The plaintiff's amended complaint is dated November 4, 1997. It consists of three counts:
The first count, predicated upon breach of an agreement, alleges the parties entered into an oral agreement to lease premises known as 17-19 Kimberly Avenue, West Haven, Connecticut, for a term commencing August 1, 1996; that the tenants took possession of these premises and proceeded to demolish and remove portions of real and personal property but refused to execute a formal lease of the premises or to take possession of same. The plaintiff claims they suffered damages in excess of $45,000 for the replacement of some personal property and repair of the premises and lost rent.
The second count is predicated upon the theory that the defendants have been unjustly enriched.
The third count claims that the defendants have converted certain personal property owned by the plaintiff and located in the building known as 17-19 Kimberly Avenue, West Haven, Connecticut. CT Page 1410
The defendants denied all the allegations in each of these three counts. In their second special defense, defendants allege that the plaintiffs failed to finalize a lease agreement.
In their third special defense, defendants allege they made repairs and improvements to the property at the request or demand of plaintiffs and have not received compensation for same.
In their first special defense, defendants allege they improved the property and are entitled to a setoff or counterclaim for the value of the improvements made by them to the property.
The defendants' fourth special defense alleges that the plaintiffs ousted them from possession of the premises and allowed another party to gain possession of the premises. In their fifth special defense, defendants assert that the defendants' claim for rent is barred by the statutes of fraud.
Plaintiffs' reply denied all of the special defenses and denied all of the claims for setoff or counterclaim.
The court conducted a hearing on this dispute. Thereafter, both parties filed posttrial briefs. Based on the evidence adduced at the hearing and to some extent on the admissions in the defendants' posttrial brief, the court makes the following findings:
The parties entered into an agreement in the spring of 1996. This agreement provided that the defendant would lease the premises for a period of five years for an annual rental together with an option to purchase. The agreement, which was eventually reduced to writing in the form of standard lease with an addendum, was prepared by plaintiff and submitted to defendants on or about June 9, 1996. (Plaintiffs' Exhibit 1) At that time the defendants had been in possession of the premises since May of 1996 and were actively and extensively engaged in preparing the premises for occupancy as a hardware store. These preparations were in accordance with the plan prepared by defendants. The plans involved widespread destruction and removal of various elements of the interior of the building, including the ceiling, the vinyl flooring and a plywood subflooring, the insulation, various electrical components and fixtures, some walls, plumbing fixtures and some portions of the ceramic tile in CT Page 1411 two bathrooms, the removal of the walls surrounding a small office and the removal of a facade on the front exterior of the building. The photographs of the interior and exterior of the building submitted by the plaintiff, Exhibits A through K, inclusive, depict an interior barren of ceiling, floor covering, subflooring, electrical fixtures, interior walls, and in an area formerly devoted to the bathroom, the absence of fixtures and a floor area, formerly improved with ceramic tile but with large portions of the tile removed.
The oral agreement between the parties contemplated that the defendants would have access and possession rent free from June 1, 1996 to July 31, 1996 for the purpose of renovating said premises for use as a hardware store. It also permitted tenants to make interior alterations at their own expense and exterior alterations with the permission of the landlord.
On or about July 19, 1996, the defendant, John Cambino, and the plaintiff initialed their agreement extending the access period to August 31, 1996. The defendants reviewed the written lease and continued with their renovation work and remained in possession until late July or early August of 1996. They did not execute the written lease, however. In the fall of 1996, the defendants informed plaintiff they would not sign the written lease and no longer desired to lease the premises. At the hearing, defendant Joseph Cambino alleged that the written agreement did not correspond with their oral agreement in several particulars; namely, plaintiffs' reservation of 600 feet of space in the basement; the language of the option agreement and the implications of a net-net lease concerning real estate taxes. Paul Santacroce, the plaintiff, contended that these items conformed to the oral agreement. The court finds that they do conform to the oral agreement.
When the defendants stopped working and returned the keys to the plaintiff, the property was in the state previously described. The defendants admit they took possession of the premises with the permission of the plaintiff and gutted the interior preparatory to renovating it for use as a hardware store, which they intended to operate in accordance with the lease agreement. The defendants also admitted that they removed a portion of the facade on the exterior of the premises. Extensive repairs will be required to restore the interior and exterior of the premises to its condition when the defendants took occupancy. CT Page 1412
The court concludes the parties negotiated an oral lease with the defendants permitted to take possession of the premises in May of 1996. Both parties agreed to be bound by this agreement for a period of five years with an option giving tenants the right to purchase the property. This oral agreement was not initially memorialized in writing and was not signed by the parties to be charged after it was memorialized in writing and submitted to the defendants.
The court concludes that this oral lease was void under our statute of frauds § 52-550. Amwax Corporation v. Chadwick,28 Conn. App. 739, 743 (1992) informs that "in this state the long-established rule is that when parties make an oral lease of lands reserving rent, which lease is non-actionable by reason of the statute of frauds, and the lessee thereafter enters into possession under the oral lease, there results a tenancy which under ordinary conditions at least will by implication of law will be regarded as one from year to year." The court is of the opinion that this principle of law should be applied to the facts found in this particular case.
Damages. The plaintiff seeks damages of $35,200 for loss of value to the premises and $8,800 for loss of rent and taxes. In addition, the plaintiff seeks $7,800 for various items of personalty which are no longer present on the premises since the defendant departed. The defendants admitted at the hearing that they disposed of this personal property in one way or another while they were in possession of the premises.
Plaintiff offered evidence that real estate taxes on the property in West Haven were $4,000 annually, which would add approximately $333.33 per month to the agreed upon rent in a net lease arrangement. Defendant testified that plaintiff demanded the keys to the premises when they refused to sign the lease. Upon receipt of the keys, the plaintiff resumed possession, which constituted a surrender and acceptance, which is, in effect, an election by the landlord.
 "When the lessee breaches a lease for commercial property, the lessor has two options: 1) to terminate the tenancy; or 2) to refuse to accept the surrender."
Sagamore Corporation v. Willcutt, 120 Conn. 315, 317-18 (1935).
When the landlord elects to terminate the tenancy, the action CT Page 1413 is one for breach of contract. In such case the tenant is no longer obligated to pay rent for the balance of the term. Although the termination of the tenancy releases a tenant from his obligations under the lease, such release does not leave the landlord without legal recourse to recover damages. Where a landlord as in this case elects to terminate the tenancy and regains possession, although he cannot institute an action for rent due under the lease, he may sue for breach of the lease. Where the action is one for breach of the lease, basic contract principles apply. Rokalor, Inc. v. Connecticut EatingEnterprises. Inc., 18 Conn. 384, 388-389 (1989). "A lease is nothing more than a contract." Robinson v. Weitz, 171 Conn. 545,551 (1976). In contract actions the measure of damages is that award which places the injured party in the same position as he would have been had the contract been fully formed. LaRob BusCorp. v. Fairfield, 170 Conn. 397, 404-405 (1976). As a consequence, the unpaid rent, while not recoverable as such, may be used by the court in computing the losses suffered by the plaintiff by reason of the defendants' breach of a lease. RokalorInc. v. Connecticut Eating Enterprises. Inc., supra 389.
The plaintiff offered evidence that the premises had been appraised in 1992, some four years prior to the defendants taking possession. At that time it was improved with vinyl tile floors, drop light ceilings, a small office, two lavatories and electrical services. A hot air furnace was located on the premises as was a water heater. The appraiser testified that the property was in a fair condition and had a fair market value at that time of $135,000 (Exhibit 3).
In October of 1997, the same appraiser reexamined the property. At this time he found part of the exterior facade removed with the interior gutted, ceilings taken out, walls taken off, electrical lines within walls and ceilings taken out, bathrooms all removed, as well as the office walls were removed. The vinyl tile flooring and the plywood underlayer was gone. The furnace and hot water heater were present although electrical lines to them were cut.
The appraiser concluded that the overall condition of the property was poor requiring substantial improvements to bring it back to its original condition. The appraiser determined that the property in 1987 had a fair market value of $55,000, as of October 17, 1987 (Exhibit 3). He concluded that the property had suffered an $80,000 decrease in value between February 7, 1962 CT Page 1414 (Exhibit 3) and October 17, 1987 (Exhibit 4). He did not attribute all of the decrease in value to the defendants' activities. He ascribed some of the diminution in market value to market conditions and some to normal depreciation. He concluded that the property was not usable in its present state and estimated it would cost $32 per square foot times 2,200 square feet or $70,400 to restore the property to a usable state. He determined that inasmuch as the restoration would result in a betterment over the condition he found in 1982, that it would be proper to deduct 45 percent from the $70,400 figure for depreciation. Mathematically, it would appear that 55 percent of $70,400 is $38,720. The appraiser ascribed the sum of $35,200 to the improvements taken out by the defendants.
The defendants testified that they had an option to buy the property at the end of five years for $125,000, which was the value placed on the property by plaintiffs in the spring of 1996. The property is currently on the market for $80,000. These figures support a diminution in value of the property as a result of the activities of the defendant in the amount of $45,000. Another factor which is important in the equation is the testimony of the defendant that they expected to expend approximately $40,000 in remodeling the premises. Based upon all the evidence submitted at the hearing, the court concludes that the activities of the defendants caused a diminution in the value of the plaintiffs' property in the amount of $38,720.
As previously noted, the plaintiff also seeks to recover approximately $7,800 for certain items of personal property which were removed or destroyed by the defendants. The evidence offered in support of the value of these items was not persuasive enough to constitute proof by the fair preponderance of the evidence standard that the items were worth $7,800.
Rent as such is not recoverable once the plaintiff has made an election to accept a surrender the premises. The court has considered it as an element of contract damages but concludes that the damage award based on the diminished value of the subject property caused by defendants' breach will place the plaintiff in approximately the same position as he would have been if the contract had been fully performed.
The court finds that the defendants have failed to prove the essential elements of any of their special defenses or of their counterclaim or claim of setoff. CT Page 1415
Judgment may enter for the plaintiff on the first count of their amended complaint in the amount of $38,720 with interest and costs.
Judgment may enter for the defendants on the second count and third count of plaintiffs' amended complaint.
Dorsey, J. Judge Trial Referee